## PEARL v CITY OF DETROIT

Docket No. 61588. Submitted March 1, 1983, at Detroit.—Decided June 6, 1983.

Alan J. Pearl, an employee of the City of Detroit, was granted a voluntary layoff at his own request. He subsequently sought to return to work but was never rehired. Pearl requested that his union, Local 836 of the Michigan District Council 77, American Federation of State, County and Municipal Employees, AFL-CIO, invoke the grievance procedure against the city, alleging that the city, in refusing to reinstate Pearl, had violated the collective-bargaining agreement between the union and the city. The union processed the grievance through the fourth step of the five-step grievance procedure. The next step would have been for the grievance to be submitted to binding arbitration. After full investigation, the union decided that Pearl's grievance did not have merit and did not pursue the matter further. Pearl filed a complaint against the city and the union in Wayne Circuit Court, claiming that the city had breached its contract of employment and that the union had breached its duty of fair representation. Both defendants filed motions for summary judgment on the ground that there was no genuine issue of material fact. The court, Charles S. Farmer, J., granted summary judgment in favor of both defendants. Plaintiff appeals. *Held:*

1. The trial court correctly granted the union's motion for summary judgment. Plaintiff failed to support his allegations of arbitrary conduct and bad faith on the part of the union.

2. The trial court properly granted the city's motion for summary judgment. The city was entitled to rely on the finality provision of the grievance and arbitration clause of the collective-bargaining agreement since the union did not breach its duty of fair representation to Pearl. Furthermore, the city did

REFERENCES FOR POINTS IN HEADNOTES

[1, 2] 48 Am Jur 2d, Labor and Labor Relations §§ 399, 401.

 Unions liability in damages for refusal or failure to process employee grievance. 34 ALR3d 884.

[3] 73 Am Jur 2d, Summary Judgment §§ 26, 27.

[4] 48 Am Jur 2d, Labor and Labor Relations § 398 *et seq.*

not violate its civil service rules and the terms of the collective-bargaining agreement by declining to reinstate plaintiff.

Affirmed.

1. LABOR RELATIONS — UNIONS — GRIEVANCES.

A labor union has considerable latitude in determining whether a member's grievance against his employer should be pursued and whether frivolous claims should be abandoned; the member does not have the right to demand that his grievance be pursued to the uppermost level.

2. LABOR RELATIONS — UNIONS — GRIEVANCES.

A union must act without fraud, bad faith, hostility, discrimination, arbitrariness, caprice, gross nonfeasance, collusion, bias, prejudice, wilful, wanton, wrongful and malicious refusal, personal spite, ill will, bad feelings, improper motives, misconduct, overreaching, unreasonable action, or gross abuse of its discretion in processing or refusing or failing to process a member's grievance.

3. JUDGMENTS — SUMMARY JUDGMENT.

A motion for summary judgment on the ground that there is no genuine issue as to any material fact should be granted when the trial court is satisfied that it is impossible for the plaintiff's claim to be supported at trial because of some deficiency which cannot be overcome (GCR 1963, 117.2[3]).

4. LABOR RELATIONS — UNIONS — DUTY OF FAIR REPRESENTATION — CONTRACTS.

A labor union must first breach its duty of fair representation to one of its members before that member can maintain an action against his employer for breach of the labor contract.

*Marvin D. Sharon, P.C.* (by *Marvin D. Sharon),* for plaintiff.

*Mark R. Ulicny,* Deputy Corporation Counsel, and *Frank W. Jackson,* Assistant Corporation Counsel, for the City of Detroit.

*Maurer, Kalls & Webb* (by *L. Rodger Webb),* for Michigan District Council 77, American Federation of State, County and Municipal Employees, AFL-CIO.

Before: Beasley, P.J., and V. J. Brennan and Wahls, JJ.

Beasley, J. First employed by defendant City of Detroit on June 20, 1962, plaintiff, Alan J. Pearl, a recreation instructor, was granted a voluntary layoff in August, 1975, at his own request. He sought to return to work in June of 1976, but, for various reasons, was never rehired. At plaintiff's request, his union, defendant Local 836, invoked the grievance procedure against defendant city in which it was alleged that the city, in refusing to reinstate plaintiff, violated the collective-bargaining agreement. The grievance was processed through the fourth step of the five-step grievance procedure. The next step would have been for the grievance to be submitted to binding arbitration. After full investigation, defendant union decided that plaintiff's grievance did not have merit and, therefore, did not pursue the matter further. On March 10, 1978, plaintiff filed a complaint against defendant city and defendant union, claiming that the city had breached its employment contract and the union had breached its duty of fair representation. Both defendants filed motions for summary judgment under GCR 1963, 117.2(3), which were granted on September 21, 1978. Plaintiff appeals as of right.

In granting the motions for summary judgment, the trial court held that the refusal of the union to seek arbitration did not constitute a breach of its duty to provide fair representation since plaintiff failed to support his claim that the union's actions were in bad faith, were discriminatory, or arbitrary. In relation to the city's motion, the trial court held that the city was not liable to plaintiff because it was entitled to rely on the finality

provision of the grievance and arbitration clause of the collective-bargaining agreement.

On appeal, plaintiff contends that his pleadings raised a question of fact regarding whether the union breached its duty of fair representation to plaintiff in not processing the grievance through arbitration. Additionally, plaintiff claims that a question of fact exists as to whether the city breached its union contract with him concerning reinstatement after the voluntary layoff. Essentially, plaintiff contends that the union misread the applicable provisions of the collective-bargaining agreement and, thus, clearly violated his right of reinstatement.

The union insists that it met its obligation to use its best efforts in evaluating the merits of plaintiff's grievance and attempting to resolve the underlying dispute. The union also argues that it is not obligated to process every grievance through arbitration or litigation and that it breaches its duty to provide fair representation only in the event that its conduct is arbitrary, discriminatory, or in bad faith.

In his complaint, plaintiff makes various conclusory allegations in reference to his claim against the union:

"17. That defendants local union and district council and defendant employer have refused and neglected and continue to refuse and neglect and conspire to refuse and neglect [to] act to process such grievance in accordance with Article 8, of the agreement, inasmuch as it has not been submitted to arbitration as required by step five of Article 8.

"18. That plaintiff has requested that numerous union representatives aid him in his desire to be reinstated with employer.

"19. That, nevertheless, plaintiff has not been reinstated with employer and defendant local union and

District Council 77 have refused to further process such grievance.

"20. That defendant local union and District Council 77 have connived, colluded and conspired to act in an arbitrary and discriminating manner in discharging plaintiff, the aforementioned conduct being of a continuing nature.

"21. That defendant local union and defendant District Council 77, have breached their respective duties of fair representation by violating the collective-bargaining agreement and not pursuing the arbitration procedure set forth therein with regard to plaintiff's aforementioned grievance, such breach of duty being of a continuing nature.

"22. That plaintiff attempted to use the contract grievance procedures but was denied fair representation by Local Union 836 in such attempt.

"23. That defendant Local Union 836 acted in a perfunctory manner, arbitrarily, discriminatorily, or in bad faith towards plaintiff, a member of its union, and thereby a breach and statutory duty of fair representation, the aforementioned conduct being of a continuing nature."

The record reflects that on September 4, 1973, plaintiff, pursuant to the collective-bargaining agreement in effect between the city and the union, requested, and was granted, an educational leave of absence. He returned to his position as a recreation instructor on September 3, 1974, but, on March 29, 1975, he was laid off under the bargaining agreement then in effect because of a lack of funds. One month thereafter, he was recalled as a recreation instructor, receiving a promotion to area instructor later in the year. As indicated, in August, 1975, he requested and was granted a voluntary layoff. On September 17, 1975, his request was made effective and he was again placed on voluntary layoff status.

In an official grievance form filed with the union

on September 9, 1977, plaintiff asserted that he contacted the city's personnel department in June, 1976, indicating that he desired to be reinstated to his recreation instructor position. Rather than reinstating him to the position, plaintiff claimed that the city wrongfully promoted several lower level employees to the position. He sought reinstatement and recertification to the instructor position along with back pay, benefits, and seniority rights.

A fourth-step hearing was held between the union and the city on December 8, 1977, at which the city presented its formal position on plaintiff's agreement, namely, that under the established rules of its personnel department, the existence of a preferred eligible list of applicants for plaintiff's position, of which plaintiff was a member, does not prevent the city from promoting employees to plaintiff's position. After this procedure, the union determined that plaintiff's grievance was without merit and, consequently, decided not to demand binding arbitration on the grievance.

The following applicable provisions are embodied in the collective-bargaining agreement:

"Section 1. Lay-offs Defined:

"(a) A Lay-off is the separation of an employee from a department in a classification of the City for lack of work, lack of funds, or reasons other than the acts or delinquencies of the employee.

"(b) A voluntary lay-off is one made for the convenience of the employee, which may be granted in the interest of the service, subject to applicable rules.

"(c) Unless otherwise indicated, the term 'seniority' shall mean total city seniority as defined in Rule XIV, Section 2, and in accordance with Rule XVIII, Veterans Preference. * * *

"Section 5. Preferred Eligible Lists:

"The Secretary and Chief Examiner shall have kept a

record to be known as the Preferred Eligible List, which is to be made up of the names of employees duly certified and confirmed, who shall have been laid off for 'lack of funds' or other reasons than delinquencies of the employee himself, such names to be entered on the list in the order of seniority (according to the seniority rule as hereinafter set out), as appears on the record in the office of this Commission. Upon requisition, certification shall be made from the Eligible List secured by examination."

Our review of the foregoing clauses convinces us that the city was justified in promoting employees from within the department to plaintiff's former position. The city asserts, and plaintiff does not refute, that it does not have to grant a voluntary layoff to an employee. We interpret the rules to entitle an employee who is discharged for lack of funds or work to be recalled immediately to his position, as long as he has greater seniority than other available discharged employees. An involuntarily laid off employee is vested with pre-emptive rights: he can block both the hiring of a new employee to assume the position and the promotion of an employee from within the department. In comparison, a voluntarily laid off employee has restricted reinstatement rights: he can only prevent the city from hiring a new employee to fill his position.

In their appellate briefs, both defendants offer a rationale for the preferential treatment afforded employees who are discharged because of a lack of funds or work. They state that an individual who takes a leave of absence in considered to have little equity in re-employment, since (1) the city has a legitimate interest in maintaining a stable work force, (2) it is not in the city's best interests to encourage employees to vacate their positions temporarily in order to pursue goals that do not

benefit the city, and (3) the operating efficiency of a city department is disrupted whenever an employee leaves his position. We find these arguments to be sound and persuasive.

In considering plaintiff's claim that he was denied fair representation as a consequence of the union's allegedly arbitrary, discriminatory, and bad faith actions in refusing to seek binding arbitration of the grievance, we note that plaintiff, in response to the union's affidavits and depositional testimony in support of its motion for summary judgment, did not make a showing by affidavits, admissions, or other documentary evidence that a genuine issue of disputed fact existed as to a questioned element of his claims.

In his deposition, Gerald Burlingame, a field staff representative for the union, testified that (1) plaintiff's grievance was processed to the fourth step, (2) at the hearing thereon, the city's labor representatives evinced that the city did not violate the collective-bargaining agreement, (3) he agreed with the city's view on plaintiff's grievance, and (4) had the union representatives perceived that plaintiff's claim had merit, they would have submitted it to arbitration.

By way of the unrebutted affidavit of Lloyd Simpson, a union vice-president, the union explained its handling of plaintiff's grievance:

"13. Under City Civil Service Rules, incorporated in the contract and referred to in Article 16, Section A(2), quoted above, the rights of persons on voluntary layoff are limited and differ from the rights of persons on layoff for lack of work or lack of funds.

"14. Persons who *voluntarily* opt to leave City employment by requesting a voluntary layoff are, when they desire to return to their City job, entitled to be placed on an eligibility list to be recalled to a vacancy

in their classification. The City is obligated to recall the most senior person from that list before hiring a new employee. Once recalled, an employee on voluntary layoff retains his/her pre-layoff seniority.

"15. The City must recall an employee on a layoff for lack of work or lack of funds before recalling an employee on voluntary layoff status (Article 16, Section D).

"16. The City *may* promote an employee on the active payroll of the City of Detroit prior to recalling anyone from voluntary layoff status. This is not true as between a promotion and recall of an employee on layoff due to lack of work or lack of funds [Article 16, Section D(3)].

"17. The Union has not to my knowledge attempted to alter the rights of employees on voluntary layoff during bargaining.

"18. The Union's position, at least since I have held a position at the District Council level, has been that the City Civil Service Rules and its practice under them with respect to voluntary layoffs, represents an equitable accommodation of the seniority rights of employees laid off *involuntarily,* the seniority rights of employees who have remained on the City payroll and the rights of the employees who have chosen *voluntarily* to sever their employment, at least temporarily, with the City of Detroit. * * *

"20. Upon information and belief, Alan J. Pearl did not bring or attempt to bring internal union charges against any officer of Michigan District Council 77 or its affiliated Local 836, protesting the decision not to appeal his grievance to arbitration."

In *Lowe v Hotel & Restaurant Employees Union, Local 705,*[1] the Supreme Court held that a union has considerable latitude in determining whether a grievance should be pursued and whether frivolous claims should be abandoned. The *Lowe* Court also enunciated the rule that an

---

[1] 389 Mich 123, 146; 205 NW2d 167 (1973). See, also, 48 Am Jur 2d, Labor and Labor Relations, § 399, p 310.

employee does not have the right to demand that his grievance be pursued to the uppermost level:

"It has been held that an individual member does not have the right to demand that his grievance be pressed to arbitration, and the union 'obviously' is not required to carry every grievance to the highest level, but must be permitted to assess each with a view to individual merit. *Gunkel v Garvey,* 45 Misc 2d 435; 256 NYS2d 953 (1964).

"Having regard for the good of the general membership, the union is vested with discretion which permits it to weigh the burden upon contractual grievance machinery, the amount at stake, the likelihood of success, the cost, even the desirability of winning the award, against those considerations which affect the membership as a whole.

"In doing so, the courts have said that the union must act without fraud, bad faith, hostility, discrimination, arbitrariness, caprice, gross nonfeasance, collusion, bias, prejudice, wilful, wanton, wrongful and malicious refusal, personal spite, ill will, bad feelings, improper motives, misconduct, overreaching, unreasonable action, or gross abuse of its discretion in processing or refusing or failing to process a member's grievance." (Footnote omitted.)[2]

After a careful review of the record, we conclude that the trial court correctly granted the union's motion for summary judgment. Plaintiff was unable to support his allegations of arbitrary conduct and bad faith on the part of the union.

In *Revitzer v Trenton Medical Center, Inc,*[3] we held that a summary judgment motion under GCR 1963, 117.2(3) should be granted only when the trial court is satisfied that it is impossible for the plaintiff's claim to be supported at trial because of some deficiency which cannot be overcome. Plain-

---

[2] *Lowe, supra,* pp 146-147.

[3] 118 Mich App 169, 172; 324 NW2d 561 (1982).

tiff's generalized conclusory averments that the union acted arbitrarily and discriminatorily are inadequate to repel the union's summary judgment motion.[4]

In *Ruzicka v General Motors Corp,*[5] the Sixth Circuit Court of Appeals held that an aggrieved employee cannot maintain an action against his employer for breach of contract unless it is first demonstrated that the union breached its duty of fair representation:

> "As a general rule, an employer may rely on the finality provision of a grievance and arbitration clause in a collective bargaining agreement. * * * An exception to that rule is created when the contractual process has been 'seriously flawed by the union's breach of its duty to represent employees honestly and in good faith and without invidious discrimination or arbitrary conduct.' * * * In that event, the union's breach 'removes the bar of the finality provisions of the contract.' * * * The protection afforded the employer by the finality provisions of the collective bargaining agreement is contingent upon the union's discharge of its duty to represent the employee fairly. In other words, in order to avoid the finality of the grievance process and sue GM for breach of the contract, Ruzicka must first show that the Local's unfair representation seriously undermined the integrity of the arbitral process." (Citations omitted.)

Plaintiff asserts that an employer is not insulated by the union's refusal to proceed to binding

---

[4] In *Harris v Schwerman Trucking Co,* 668 F2d 1204, 1206 (CA 11, 1982), the court held that a union does not, ipso facto, breach its duty of fair representation solely because it evaluates the merits of the plaintiff's grievance contrary to plaintiff's assessment thereof. An incorrect interpretation by the union of a collective-bargaining clause, in the absence of bad faith, does not impose liability upon the union. See *Dill v Greyhound Corp,* 435 F2d 231, 235-238 (CA 6, 1970), *cert den* 402 US 952; 91 S Ct 1622; 29 L Ed 2d 122 (1971).

[5] 649 F2d 1207, 1212 (CA 6, 1981).

arbitration where, as here, the union acted in an arbitrary and discriminatory manner.

In light of our holding that the union provided plaintiff with fair representation, we hold that the trial court properly granted the city's motion for summary judgment. Unlike the factual setting in *Vaca v Sipes*,[6] where a review of the union's handling of an employee's claim revealed that it was handled in a perfunctory manner, the record in the instant case discloses that the union fairly and competently processed plaintiff's grievance. We also decline to hold that the city violated its civil service rules and the terms of the collective-bargaining agreement by declining to reinstate plaintiff.

Affirmed.

---

[6] 386 US 171, 191-194; 87 S Ct 903; 17 L Ed 2d 842 (1967).