MARTIN v EAST LANSING SCHOOL DISTRICT

Docket No. 125831. Submitted November 5, 1991, at Lansing. Decided
March 2, 1992, at 9:25 A.M.

Cheryl Martin and several other teachers employed by the East
Lansing School District brought an action in the Ingham Cir-
cuit Court against the school district, the East Lansing Educa-
tion Association, and association representative Jean Cusick,
alleging violations of their due process rights by the school
district and the association, breach of implied contract by the
school district, unjust enrichment on the part of the school
district, breach of duty of fair representation by the association
and Cusick, breach of express contract by the school district,
and promissory estoppel against the school district. The plain-
tiffs brought their action after the school district and the
association abided by an arbitrator's decision that the plaintiffs'
salaries be frozen at their current levels, suspending annual
increases as scheduled in a collective bargaining agreement, in
order to correct salary overpayments that resulted when the
plaintiffs received one hundred percent service credit, instead
of fifty percent as provided under the collective bargaining
agreement, for every year spent teaching before being hired by
the school district. The court, Thomas L. Brown, J., granted
summary disposition in favor of the defendants with respect to
all claims and dismissed the action. The plaintiffs appealed.

The Court of Appeals *held:*

1. The trial court, in granting summary disposition, did not
err in ruling that there existed no genuine issues of material
fact; the plaintiffs failed to identify any factual issues in
responding to the defendants' motions for summary disposition.

2. The trial court did not err in ruling that the arbitrator, in
ordering a freeze of the plaintiffs' salaries, had acted within his
authority and consistent with the provisions of the collective
bargaining agreement. The arbitrator did not discriminate
against the plaintiffs on the basis of their union membership,

REFERENCES

Am Jur 2d, Contracts § 12; Estoppel and Waiver §§ 48, 49; Labor
and Labor Relations §§ 398-400, 406, 407.
Comment Note—Promissory estoppel. 48 ALR2d 1069.

and his decision to freeze the plaintiffs' salaries did not deprive them of annual increases due under the collective bargaining agreement, but merely caused the increases to be credited toward salary overpayments received by the plaintiffs.

3. The trial court did not err in ruling that no breach of the express provisions of the collective bargaining agreement was effected by the salary freeze. Contrary to the plaintiffs' assertions, the collective bargaining agreement provision governing annual salary increases was not ambiguous, and the salary freeze did not amount to a reduction in rank or compensation without just cause, as prohibited by the collective bargaining agreement.

4. The trial court did not err in summarily dismissing the claims of breach of implied contract and unjust enrichment. The plaintiffs' claim that a contract must be implied to prevent the school district from being unjustly enriched by receiving the services of experienced teachers without paying full compensation is without merit. A contract cannot be implied in light of the existence of the collective bargaining agreement and the individual contracts between each plaintiff and the school district. Also, the plaintiffs were overpaid for prior work experience, and the salary freeze was imposed only to recover the overpayments.

5. The trial court did not err in summarily dismissing the claim of promissory estoppel against the school district. That claim was based on an assertion that the plaintiffs had relied on verbal promises by school district administrators that the plaintiffs were entitled to full credit for prior work experience. However, because MCL 380.1231; MSA 15.41231 requires that contracts between teachers and boards of education must be in writing, the plaintiffs are bound by the provision of the collective bargaining agreement that limits service credits for prior work experience to fifty percent of each year of prior experience.

6. Because the plaintiffs failed to establish a breach of the collective bargaining agreement, they could not prevail on their claim of breach of the duty of fair representation by the association and Cusick. The trial court did not err in summarily dismissing the claim.

7. The plaintiffs, by stipulating in the trial court that they would not contest the dismissal of their due process claims against the association and Cusick, have failed to preserve appellate review of that claim. A similar claim against the school district was premised on an assertion that the provisions of the collective bargaining agreement guaranteed them annual

increases in their salaries. The salary freeze did not deny any increases due the plaintiffs, but merely corrected past overpayments by temporarily suspending salary increases.

Affirmed.

1. CONTRACTS — IMPLIED CONTRACTS — EXPRESS CONTRACTS.

A contract will not be implied where there is an express contract covering the same subject.

2. ESTOPPEL — PROMISSORY ESTOPPEL — STATUTE OF FRAUDS.

Promissory estoppel arises where there is a promise that the promisor reasonably should have expected would induce action of a definite and substantial character on the part of the promisee, and the promise in fact produces such reliance or forbearance under circumstances requiring that the promise be enforced if injustice is to be avoided; promissory estoppel may be raised to defeat a defense under a statute of frauds only where a plaintiff suffers detriment as a result of acting solely in reliance on an oral agreement with a defendant.

3. LABOR RELATIONS — UNIONS — DUTY OF FAIR REPRESENTATION.

A member of a labor union, in order to prevail on a claim of unfair representation against the union, must establish a breach of the duty of fair representation and a breach of the collective bargaining agreement.

*Hankins & Associates, P.C.* (by *Dan E. Hankins* and *Randie K. Black*), for the plaintiffs.

*Miller, Johnson, Snell & Cummiskey* (by *Peter A. Patterson* and *W. Scott Szpara*), for East Lansing School District.

*White, Beekman, Przybylowicz, Schneider & Baird, P.C.* (by *Thomas A. Baird* and *Michele R. Eaddy*), for East Lansing Education Association and Jean Cusick.

Before: MacKENZIE, P.J., and SULLIVAN and G. S. ALLEN,* JJ.

G. S. ALLEN, J. Plaintiffs, six school teachers and

---

* Former Court of Appeals judge, sitting on the Court of Appeals by assignment.

one social worker employed by defendant school district, appeal as of right from a January 24, 1990, opinion and order of the Ingham Circuit Court granting summary disposition to defendants, East Lansing School District, East Lansing Education Association, and Jean Cusick. Plaintiffs' complaint seeks to avoid a January 28, 1988, arbitrator's opinion and award affecting salary levels paid pursuant to a collective bargaining agreement between defendants district and association.

Plaintiffs were hired by defendant district between 1983 and 1986 and each plaintiff was given one hundred percent credit for previous teaching experience. Each employment contract was made subject to the 1983-1986 collective bargaining agreement, which contained a step-scale salary schedule. Article XXVI(B) of that agreement expressly provided that new hires would receive one-half credit for all prior teaching experience. Article XXVI(D) provided that "all teachers shall be compensated in accordance with Article XXVI without deviation." Article XIX(B) prescribed a grievance procedure culminating at level four:

> *Level Four:* If the Association elects to submit the grievance to arbitration, it shall notify in writing the Superintendent within 21 days following the disposition at Level Three.
>
> \* \* \*
>
> (b). . . The arbitrator's decision shall be in writing. . . . The arbitrator shall be without power and authority to make any decision which requires the commission of an act prohibited by law or which is violative of the terms of this Agreement.

Despite the language of Article XXVI(B), the district interpreted that article as establishing minimum rather than maximum criteria for granting credit for prior teaching experience. Teachers who

upon hire did not receive full credit brought the discrepancy to the attention of the association, which in the fall of 1985 formally disputed the district's interpretation as violative of Article xxvi(b). On July 2, 1986, the association filed a grievance and, as relief, asked not that persons granted full credit be reduced to half credit, but that persons not given full credit be given back pay for the period they were not compensated at that level of the salary schedule.

The grievance was not resolved, and in September 1986, pursuant to Article xix(b)4, the association submitted the dispute to the American Arbitration Association, which selected Barry Brown as arbitrator. Arbitration commenced on October 25, 1987, and on January 26, 1988, Brown entered a written opinion and award. The arbitrator ruled against the district's interpretation of xxvi(b) and held that those teachers who had been given full credit for prior teaching experience had been overpaid. However, the arbitrator rejected the association's request for relief, viz.: that teachers not receiving full prior credit should receive an increase in pay. Instead, the arbitrator ruled that all teachers, including plaintiffs-appellants, who were given more experience credit than that to which they were entitled under the agreement

> must have their salary red circled. They should not be moved on the salary schedule until the improperly credited steps are made up. For example, teacher Conway was given full credit for six years experience when he/she was hired in 1985. This teacher will now remain at his/her present salary level for two or three years to remove the effects of gaining more than one-half credit at the time of employment. In other words, all teachers hired at an improperly high starting rate in the 1983-86 period must continue at their present salary until the overpayment is made up. Some teachers may have to forego general increases and

step increases for several years for the remedy to be reached.

The contract violation established was improper and disparate placement on the salary schedule for several teachers hired under the coverage of this labor agreement. Increasing the salary of all other teachers is not appropriate, feasible or within the arbitrator's authority. Decreasing the salary of those improperly paid is inequitable and a harsh remedy.

Feeling aggrieved by the "red circling" of their salaries, plaintiffs filed a four-count complaint in circuit court on September 13, 1988. Count I (against the district and the association) alleged a violation of procedural due process because of arbitration without notice or opportunity for plaintiffs' participation. Count II (against the district only) alleged breach of an implied verbal contract under a theory of promissory estoppel. Count III (against the district only) alleged unjust enrichment. Count IV (against the association and Cusick) alleged a violation of the duty of fair representation by submitting the dispute to grievance and arbitration proceedings, by failing to give plaintiffs an opportunity to participate in the proceedings, and by failing to appeal the arbitrator's award.

Defendants moved for summary disposition. On July 25, 1989, the trial court entered an order granting the association and Cusick's motion with respect to counts I and IV. However, plaintiffs were allowed to amend their complaint with regard to count IV. Subsequently, plaintiffs filed an amended complaint that added count V (against the district only), alleging that the district violated the collective bargaining agreement by paying plaintiffs an excessive salary and again by freezing plaintiffs' salaries in accordance with the arbitrator's award.

Defendants again moved for summary disposi-

tion,[1] and on January 24, 1990, the trial court granted the motions with respect to each of the five counts. Basically, the court found:

1. The arbitrator had not exceeded his authority and was within the parameters of the master contract by freezing plaintiffs' salaries.

2. Count I: Plaintiffs' due process rights had not been violated (a) by the association and Cusick because of lack of state action, or (b) by the district because plaintiffs had no property interest grounded in contract, express or implied, in annual salary progressions.

3. Count II: The express provisions of the master contract precluded any action against the district based on promissory estoppel.

4. Count III: Unjust enrichment against the district is barred as a matter of law by the existence of the master contract.

5. Count IV: Action against the association and Cusick for breach of the duty of fair representation is precluded because of plaintiffs' failure to establish a breach of contract.

6. Count V: Breach of contract by the district was not established with respect to Article XXVI because plaintiffs were not harmed and with respect to Article XIX plaintiffs' salaries were frozen rather than reduced.

On appeal, plaintiffs do not challenge seriatim the trial court's findings but, instead, raise six claims of alleged error, as hereinafter described.

---

[1] Summary disposition of count I was sought pursuant to MCR 2.116(C)(4) on the ground that the trial court lacked subject-matter jurisdiction. With respect to all five counts, summary disposition was sought pursuant to MCR 2.116(C)(8) and (10) the on grounds that plaintiffs failed to state a claim upon which relief could be granted and that, except for the amount of damages, there was no genuine issue concerning any material fact.

### I. DID THE TRIAL COURT ERR IN GRANTING DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT?

The portion of plaintiffs' brief regarding this issue is devoted to the assertion that numerous issues of material fact exist, which may not be disposed of by summary judgment under the standard of review governing motions under MCR 2.116(C)(10). Unfortunately, plaintiffs' brief does not state what these factual issues are. We do not quarrel with the rule as stated by plaintiffs, but are unable to find error because of their failure to identify these purported factual issues.

### II. DID THE TRIAL COURT ERR IN RULING THAT THE ARBITRATOR WAS WITHIN HIS AUTHORITY AND THE MASTER CONTRACT BY FREEZING OR "RED-CIRCLING" PLAINTIFFS' SALARIES?

The question whether the arbitrator exceeded his authority was addressed by the trial court in connection with the breach of contract claim raised in count v. As noted earlier, count v was added because plaintiffs had not alleged a breach of contract claim in conjunction with their claim of unfair representation in count IV. Specifically, plaintiffs contend that the arbitrator breached Article II(A) of the master agreement when ordering a freeze of plaintiffs' salaries. Article II(A) reads in relevant part:

> As a duly elected body exercising governmental power under color of the law of the state of Michigan, *the Board undertakes and agrees that it will not directly nor indirectly discourage or deprive or coerce any teacher in the enjoyment of any rights conferred by Act 379 or other laws of Michigan or the Constitutions of Michigan and the United States; that it will not discriminate against any*

*teacher with respect to hours, wages or any terms or conditions of employment* by reason of membership in the Association, participation in any activities of the Association or collective professional negotiations with the Board, or institution of any grievance, complaint, or proceeding under this Agreement or otherwise with respect to any terms or conditions of employment. [Emphasis added.]

We disagree. First, in their original motion brief filed on July 7, 1989, plaintiffs mentioned a breach of Article II(A) by the district, but no mention was made of a breach by the arbitrator. When given an opportunity to amend, plaintiffs made no mention in count v that Article II(A) was violated. Nor did plaintiffs mention any violation of Article II(A) by either the district or the arbitrator in opposing the motions for summary disposition filed after the first amended complaint. Thus, plaintiffs' reliance on Article II(A) as showing a triable factual issue comes too late and should not be considered on appeal.

Second, Article II(A) is limited to discrimination occurring by reason of a teacher's union membership. We find nothing in the pleadings or the file suggesting that plaintiffs were being discriminated against because of union membership. Further, the arbitrator's carefully drawn opinion shows that he was cognizant that he could not apply the master agreement in a discriminatory manner.

Third, plaintiffs assert that by "red-circling" their salaries, the arbitrator exceeded his authority or, at the very least, misinterpreted the master agreement, because the master agreement expressly entitled plaintiffs to annual step increases.[2] Again we disagree. The arbitrator's action did not preclude the annual step increases, but caused

---

[2] This claim of error is again raised and discussed in issue III, *infra*.

these increases to be credited toward the salary overpayment already received by plaintiffs. The flaw in plaintiffs' argument is that, unlike other teachers, plaintiffs had incurred indebtedness to the district, and their annual step increases, when made, were credited toward that indebtedness, rather than being paid in cash. Given these circumstances, we conclude that the arbitrator neither exceeded his authority nor misinterpreted the master agreement.

### III. DID THE TRIAL COURT ERR IN RULING THAT THERE WAS NO BREACH OF CONTRACT, EXPRESS OR IMPLIED?

#### A. EXPRESS CONTRACT CLAIMS. (COUNT V)

First, plaintiffs point to Article XXVI(A) and argue that the trial court erred in ruling that annual step increases were not "guaranteed." For the reasons set forth in our discussion of issue II, *supra,* we find the error harmless. Whether the salary step increases were "guaranteed" becomes immaterial because no claim is made that the step increments were not paid when due and the court's opinion clearly states that whenever step increments were paid, plaintiffs were to be given credit toward the overpayment previously made by defendant district. This issue is further addressed in connection with plaintiffs' due process claim raised in issue v, *infra.*

Second, plaintiffs assert on appeal for the first time that the language of Article XXVI(B) is ambiguous and that they should be allowed to introduce parol evidence to clarify the ambiguity. Because this issue was not raised by affidavit or other documentary evidence in the trial court, summary disposition was appropriate and the issue may not be raised on appeal. Further, once the question of

the meaning of Article xxvi(b) was submitted to and decided by the arbitrator, any ambiguity was removed. To hold otherwise would violate the basic rule that review of an arbitrated matter is limited to determining whether the arbitrator acted within the scope of his authority and disclosed any bias. No claim of bias is made in this case, and in issue ii, *supra,* this Court has found that the arbitrator was acting within the scope of his authority. Further, even without the decision of the arbitrator, our review of the master agreement discloses no ambiguity.

Third, plaintiffs contend that the trial court erred in ruling that the "freezing" of plaintiffs' salaries did not violate Article xvi(c) of the master agreement. That section reads in relevant part:

> No teacher shall be reprimanded, disciplined, *reduced in rank or compensation, or deprived of any professional advantage without just cause.* Any such reprimand, discipline, or *reduction in rank, compensation or advantage,* including adverse evaluation of teacher performance or violation of professional ethics asserted *by the Board or any agent or representative thereof* shall be subject to the Professional Grievance Procedure hereinafter set forth. [Emphasis added.]

Plaintiffs admit that they were not reprimanded, disciplined, or reduced in rank, but claim the freezing of their salaries "effectively discontinued" a continual climb in their rank, compensation, and professional advantage. We find the argument flawed in obvious respects. As noted earlier, plaintiffs' salaries were not "reduced" from what the salaries should have been under Article xxvi of the master agreement. Even if it is assumed arguendo that the freezing of salaries was tantamount to a reduction in rank or professional advantage, it

was ordered by the arbitrator "for just cause." Therefore, there was no violation of Article xvi(c). Further, in ordering the freeze, defendant district merely complied with the binding award of the arbitrator in accordance with the grievance provisions of the master agreement.

### B. IMPLIED CONTRACT CLAIMS.[3]

### 1. UNJUST ENRICHMENT. (COUNT III)

Count iii of plaintiffs' amended complaint raised the claim of unjust enrichment. The trial court ruled that the claim must fail because it was barred by the existence of an express contract, viz.: the individual contract with each teacher, which makes the contract subject to the terms of the master agreement, including Article xxvi. Plaintiffs argue that this begs the question because Article xxvi(b), governing credits for prior work experience, which the trial court found clear and unambiguous, is ambiguous. This is the same claim of ambiguity raised by plaintiffs and rejected by us in issue iii-a, *supra.*

Plaintiffs assert that defendant district has been unjustly enriched by receiving the services of the more qualified and experienced teachers without paying compensation for such services by reason of the red-circling freeze. In such instances, the law implies a contract to prevent unjust enrichment, which occurs when one party receives a benefit from another the retention of which would be inequitable. *In re McCallum Estate,* 153 Mich App 328, 335; 395 NW2d 258 (1986).

However, a contract will be implied only if there is no express contract. *Campbell v City of Troy,* 42

---

[3] This claim is raised against the district only.

Mich App 534, 537; 202 NW2d 547 (1972). In the present case, the individual contracts made with plaintiffs were expressly subject to the terms and conditions of the master agreement. Further, it is a gross mischaracterization to assert that defendant district paid *no* compensation for the prior work experience. As we have stated several times before, plaintiffs were in fact overpaid for prior work experience according to the master agreement, and the red-circling freeze was only imposed to recapture the amount of overpayment.

## 2. PROMISSORY ESTOPPEL. (COUNT II)

Count II of plaintiffs' amended complaint raised a claim of promissory estoppel. As with the claim of unjust enrichment asserted in count III, plaintiffs rely on the promises made to them during precontract negotiations that their salary levels would be based on one hundred percent credit for prior teaching experience. Plaintiffs assert that their reliance on those promises caused them to cease looking for other teaching positions and that, under such circumstances, the prior promises should be enforced if injustice is to be avoided.

Promissory estoppel arises in equity when (1) there is a promise (2) that the promisor should reasonably have expected to induce action of a definite and substantial character on the part of the promisee (3) which in fact produces reliance or forbearance of that nature (4) under circumstances such that the promise must be enforced if injustice is to be avoided. *McMath v Ford Motor Co,* 77 Mich App 721, 725; 259 NW2d 140 (1977). The promise must be definite and clear. *Id.* Where a defense under a statute of frauds has been raised, the rule applied has been that one must act to his detriment solely in reliance on the oral agreement,

or where its application is necessitated by the facts. *Pursell v Wolverine-Pentronix, Inc,* 44 Mich App 416, 419; 205 NW2d 504 (1973).

The trial court rejected the claim of promissory estoppel on the dual grounds that (1) MCL 380.1232; MSA 15.41232 extinguishes obligations existing before the written individual contracts were made and (2) the written individual contracts were expressly made subject to Article XXVI(B) of the master agreement, which prohibited more than fifty percent credit for prior teaching experience. On appeal, plaintiffs assert that MCL 380.1232; MSA 15.41232 does not apply. In pertinent part that statute provides:

> The board of a school district, by agreement between the board and a teacher or by agreement between the board and an organization representing the teacher. . . *may terminate an existing contract* for the services of the teacher and *substitute a new contract* which provides *increased benefits* to the teacher. The new contract shall be binding without regard to preexisting duties or obligations of either the board or the teacher under the previous contract. [Emphasis added.]

We find that the trial court erred. As can be seen from the language of the statute, it applies to new contracts that provide "increased benefits to the teacher." The individual written contracts did not increase the benefits verbally promised in prior negotiations. Also, the language pertains to "existing contracts for services" that are terminated and for which new contracts are substituted. No evidence was presented that new contracts were substituted for the individual written contracts.

Nevertheless, although the trial court erred in part, the correct result was reached. The court

correctly rejected promissory estoppel on the first of the dual grounds recited above. Even if promissory estoppel was not barred by the subsequently written contracts, the implied promises were not in writing. As argued in defendant district's brief, contracts between teachers and boards of education must be in writing and signed by the proper entity. MCL 380.1231; MSA 15.41231. To allow verbal representations by staff administrators to bind the district without a written contract or action by the board itself would be to ignore the statute.

In summary, we find no error in the trial court's disposition of plaintiffs' express and implied claims in contract. The express contracts that plaintiffs signed were indisputably subject to the terms and conditions of the master agreement. The master agreement put plaintiffs on notice of defendant association's right to pursue grievances, including the language of Article XXVI(B) itself. To allow plaintiffs to now proceed in equity with respect to counts II and III on the basis of alleged promises, express or implied, would not only contravene the statutory requirements of a written contract, but would violate the parol evidence rule for contracts. Compare *Edgecomb v Traverse City School Dist,* 341 Mich 106, 118; 67 NW2d 87 (1954).

IV. DID THE TRIAL COURT ERR IN RULING THAT
PLAINTIFFS HAD NO CLAIM FOR BREACH OF FAIR
REPRESENTATION? (COUNT IV)

This claim pertains only to defendants association and Cusick. The duty of fair representation by a labor organization is an implied duty that requires the labor organization to fairly and impartially represent *all* members of the bargaining unit. *Humphrey v Moore,* 375 US 335, 342; 84 S Ct

363; 11 L Ed 2d 370 (1964); *Goolsby v Detroit,* 419 Mich 651, 661; 358 NW2d 856 (1984). To prevail on a claim of unfair representation, the employee must establish not only a breach of the duty of fair representation but also a breach of the collective bargaining agreement. See *Pearl v Detroit,* 126 Mich App 228, 238; 336 NW2d 899 (1983), and *Hines v Anchor Motor Freight, Inc,* 424 US 554, 570-571; 96 S Ct 1048; 47 L Ed 2d 231 (1976).

With respect to this claim, the trial court simply ruled that, because they had failed to establish a breach of an express or implied contract by any of the named defendants, plaintiffs "could not prevail on a fair representation claim and this Court need not decide further on that issue." Plaintiffs concede that proof of breach of contract was a condition precedent to establishing a breach of the duty of fair representation, and we have held in issue III, *supra,* that there was no breach of contract by any of the named defendants. Therefore, we affirm the trial court's decision and judgment regarding this issue.

## V. DID THE TRIAL COURT ERR IN DETERMINING THAT PLAINTIFFS' DUE PROCESS RIGHTS HAD NOT BEEN · VIOLATED? (COUNT I)

At the July 12, 1989, hearing regarding defendants' first motions for summary disposition, plaintiffs' counsel stipulated that plaintiffs would not contest dismissal of count I with regard to defendants association and Cusick. Count I of plaintiffs' amended complaint alleged no due process violation by the association or Cusick, and the trial court's final order expressly stated that there was no due process claim against defendants association and Cusick. Therefore, the issue is not preserved on appeal against these defendants.

However, plaintiffs did preserve their due process claim against defendant district. With respect to this issue, plaintiffs contend that they have a property interest in annual progressions on the salary scale guaranteed them by Article xxvi(A) of the master agreement. This is the same claim raised by plaintiffs as an "express contract" claim in count v and rejected by us in issue iii, *supra.* As we ruled then, we find no "guarantee" of annual salary progressions in Article xxvi(A). Nothing in that article guarantees plaintiffs the right to be overpaid or to annual progressions from an overly high salary base. Further, as we stated previously, no proofs were introduced showing that, when annual step increases were paid to teachers to whom only fifty percent credit had been given, equivalent step increases were not granted to plaintiffs. Rather, the arbitrator's decision caused step increases to be applied to plaintiffs' indebtedness caused by their employment being based on one hundred percent credit for prior work experience.

Unable to find a *written* agreement promising one hundred percent credit for prior work credit, plaintiffs claim the existence of a genuine issue of fact regarding whether they were hired under an unwritten credit policy "promulgated" by the district. In support of this "de facto" policy, plaintiffs cite *Perry v Sindermann,* 408 US 593; 92 S Ct 2694; 33 L Ed 2d 570 (1972). This issue was not raised, either as a legal or factual issue, in the trial court. Under MCR 2.116(G)(4), plaintiffs are required to set forth specific facts disclosing an issue of fact for trial.

Also, unlike *Perry,* where the plaintiff had no formal contract, the present case involves a formal written contract required by statute, MCL 380.1231(1); MSA 15.41231(1), to be in writing and

signed by the board. Power specifically vested by statute in a public body to bind the state in the operation of its educational institutions and to expend public funds cannot be delegated, nor is the state bound by an implied contract. *Sittler v Bd of Control of the Michigan College of Mining & Technology,* 333 Mich 681, 686-687; 53 NW2d 681 (1952).

Finding no error that requires reversal, we affirm the trial court's judgment of summary disposition for all defendants. Costs to defendants.