# STATE OF MICHIGAN

# COURT OF APPEALS

---

EXCLUSIVE AUTO, INC.,

        Plaintiff/Counter-Defendant-
        Appellant,

v

MATTAWAN HOLDINGS, LLC, TERRON
MCLEAN, and PATRICIA MCLEAN,

        Defendants/Counter-Plaintiffs-
        Appellees.

UNPUBLISHED
April 21, 2016

No. 327045
Van Buren Circuit Court
LC No. 13-630693-CZ

---

Before: SAAD, P.J., and BORRELLO and GADOLA, JJ.

PER CURIAM.

This case involves a dispute over land and a building located at 50519 County Road 652, Mattawan, Michigan (the Property). Plaintiff appeals as of right an amended judgment, which provided, in relevant part, that no land contract existed between the parties, that plaintiff was not entitled to relief on its promissory estoppel and unjust enrichment claims, and that defendants were entitled to repossess the Property and collect back rent. For the reasons below, we affirm.

## I. FACTUAL AND PROCEDURAL HISTORY

Around June 2011, plaintiff's owner, Christopher DiPiero, met with defendant Terron McLean and his mother, defendant Patricia McLean, in response to a Craigslist advertisement regarding the Property. According to DiPiero, the parties agreed to enter a rent-to-own contract for the Property, but Terron and Patricia asked him to sign a commercial lease agreement so they could avoid paying realtor fees. DiPiero said that Terron and Patricia promised to execute a land contract in the future, so he agreed to sign the lease.

The lease term was June 4, 2011 through June 4, 2012, and it listed Patricia as the landlord and DiPiero as the tenant. The lease included the following relevant provisions:

**Repairs.**
During the Lease term, The Tenant understands the premises and building located at: 50519 CR 652 Mattawan MI 49071 is, "AS IS CONDITION". Tenant shall make, at Tenant's expense, all necessary repairs to the Leased Premises. Repairs

-1-

shall include such items as routine repairs of floors, walls, ceilings, doors, windows, roof, well pump, well plumbing, septic tank, septic system and other parts of the Leased Premises damaged or worn through normal occupancy, or repairs needed to meet Tenant's needs for business.

* * *

**Alterations and Improvements.**
Tenant, at Tenant's expense, shall have the right, upon obtaining Landlord's consent, to remodel, redecorate, and make additions, improvements and replacements of and to all or any part of the Leased Premises from time to time as Tenant may deem desirable, provided the same are made in a workmanlike manner and utilizing good quality materials. Alterations and Improvements must meet current building, mechanical, electrical and fire codes. All alterations and improvements shall be maintained in place upon the termination or non-renewal of said Lease.

The lease also contained an integration clause, Patricia's and DiPiero's signatures, and Terron's signature as a witness.

After executing the lease, DiPiero made several improvements to the Property, which included installing a new electrical system, a new furnace and ductwork, new windows, two overhead garage doors, new plumbing, two extra sinks, studding, insulation, and drywall. DiPiero asserted that each month after signing the lease, he inquired about the status of the land contract, and was repeatedly informed that a contract was under review with defendants' attorney. DiPiero explained that when the lease was about to expire, rather than providing a land contract, Terron presented a new lease agreement. DiPiero refused to sign the new lease in May, June, July, and August of 2012.

On September 17, 2012, DiPiero signed the new lease on behalf of plaintiff, claiming that Terron told him the attorney could not proceed on the land contract unless he signed the lease. The new lease term was June 4, 2012 through June 4, 2013, it listed Patricia as the landlord and plaintiff as the tenant, and it contained identical clauses regarding repairs, alterations, and improvements to the Property. Above his signature, DiPiero wrote that the contract was "being signed with the knowledge and understanding that a new contract will be drafted and executed prior to the current contract expiration." Terron signed the lease as a witness.

After signing the lease, plaintiff retained counsel in an attempt to negotiate and finalize a land contract for the Property. A land contract was presented in September 2013, but the parties never signed the agreement. According to DiPiero, when the new lease expired and the parties failed to execute a land contract, he began paying rent into an escrow account. In October 2013, Terron served a notice to quit on plaintiff, asserting a right to repossess the Property because the term of the lease had expired and plaintiff had stopped paying rent.

Plaintiff then filed a complaint against defendants, alleging claims of promissory estoppel and unjust enrichment, and defendants filed a counterclaim seeking recovery of the Property. At a bench trial on the parties' claims, Patricia testified that she did not currently own the Property,

and did not own it at the time the parties executed the leases, because she transferred the Property to Terron and her daughter, Angela Straka, in October 2007.[1] Patricia testified that she had the ability to lease the Property because she "t[ook] care of everything and the kids just put it in [her] hands," but she denied that she was acting as someone's agent. Patricia also agreed that there was no written document authorizing her to lease the Property on behalf of her children.

Terron denied that he asked DiPiero to sign a lease to avoid paying realtor fees or that he promised DiPiero a land contract. He testified that the parties negotiated a lower rent price with the understanding that the Property was in need of repairs, and that any repairs would remain after the lease expired. Terron agreed that Patricia did not own the Property, but stated that he and Angela allowed her to represent them and take care of matters related to the Property. He explained that although he did not sign the leases as a party, he knew about the leases because he signed both of them as a witness. Terron stated that he refused to sign the land contract because there were several terms that the parties could not agree on.

After trial, the court issued an opinion, concluding that plaintiff could not prevail on its promissory estoppel and unjust enrichment claims because express contracts governed the subject matter of the controversy and provided that any improvements to the Property would remain after the leases expired. The court further held that defendants were entitled to rent payments back to December 2013, when plaintiff began making payments into an escrow account, and to repossess the Property. The court later amended its opinion to clarify that it found Patricia "was clearly signing the documents as an agent of Defendant Terron McLean and Matawan Holdings." The court then entered a judgment disposing of all of the parties' claims.

## II. STANDARDS OF REVIEW

This Court reviews de novo a trial court's conclusions of law following a bench trial, and reviews its findings of fact for clear error. *Waisanen v Superior Twp*, 305 Mich App 719, 723; 854 NW2d 213 (2014). "Any question relating to the existence and scope of an agency relationship is a question of fact." *Hertz Corp v Volvo Truck Corp*, 210 Mich App 243, 246; 533 NW2d 15 (1995). "Whether a grant of equitable relief is proper under a given set of facts is a question of law that this Court also reviews de novo." *Johnson Family Ltd Partnership v White Pine Wireless, LLC*, 281 Mich App 364, 371; 761 NW2d 353 (2008).

## III. DISCUSSION

Plaintiff argues that the trial court erred by dismissing its promissory estoppel and unjust enrichment claims. Under the doctrine of promissory estoppel, courts may enforce a contract in equity if "(1) there was a promise, (2) the promisor reasonably should have expected the promise to cause the promisee to act in a definite and substantial manner, (3) the promisee did in fact rely on the promise by acting in accordance with its terms, and (4) [the] promise must be enforced to avoid injustice." *Crown Technology Park v D&N Bank, FSB*, 242 Mich App 538, 548-549; 619

---

[1] Terron and Angela transferred the Property to Mattawan Holdings, LLC, in January 2013, after Patricia executed both leases with DiPiero.

NW2d 66 (2000). In order to sustain a claim of unjust enrichment, a plaintiff must establish "(1) the receipt of a benefit by defendant from plaintiff, and (2) an inequity resulting to plaintiff because of the retention of the benefit by defendant." *Belle Isle Grill Corp v Detroit*, 256 Mich App 463, 478; 666 NW2d 271 (2003). However, courts will impose contracts in equity only if there is no express contract governing the subject matter of the controversy. *Martin v East Lansing Sch Dist*, 193 Mich App 166, 177; 483 NW2d 656 (1992).

Plaintiff first challenges the validity of the leases on the basis that Patricia did not own the Property at the time the parties executed the leases; she explicitly stated at trial that she was not acting as anyone's agent at the time she signed the leases; and there was no written document authorizing her to lease the Property. The parties do not dispute that Patricia did not own the Property at the time she signed the leases. Nonetheless, the trial court did not clearly err by finding that Patricia was acting as an agent for Terron and Angela, and therefore had authority to execute the leases on their behalf.

An agent is one who acts on behalf of another, particularly with regard to business transactions. *Saums v Parfet*, 270 Mich 165, 172; 258 NW 235 (1935). "An agency relationship may arise when there is a manifestation by the principal that the agent may act on his account." *Meretta v Peach*, 195 Mich App 695, 697; 491 NW2d 278 (1992). The authority of an agent to bind a principal may be either actual or apparent. *Id.* at 698. The manner in which the principal and agent describe the relationship is not controlling. *Lincoln v Fairfield-Nobel Co*, 76 Mich App 514, 520; 257 NW2d 148 (1977). Rather, "[i]f an act done by one person on behalf of another is in its essential nature one of agency, then he is an agent regardless of the title bestowed upon him." *Id.*

At trial, Terron testified that Patricia had actual authority to act on behalf of himself and his sister. Specifically, Terron testified that he and Angela "always let my mom take care of all the business stuff for the shop." Terron acknowledged that he and Angela owned the Property, but stated that they allowed Patricia to sign the leases because "we let her represent us." Patricia also testified that she had authority to sign the leases because "the kids just put it in my hands." Although Patricia denied that she was acting as "somebody's agent," the title she ascribed to herself is not controlling. See *Lincoln*, 76 Mich App at 520. Considering the testimony as a whole, the trial court did not clearly err by finding that an agency relationship existed between Patricia and her children, and that Patricia therefore had authority to execute the leases.

Plaintiff also argues that the leases were invalid because there was no written document authorizing Patricia to act as an agent. However, a written authorization was not required. The statute of frauds provides that "[e]very contract for the leasing for a longer period than 1 year . . . of any lands, or any interest in lands, shall be void, unless the contract . . . be in writing, and signed by the party by whom the lease or sale is to be made, *or by some person thereunto by him lawfully authorized in writing* . . . ." MCL 566.108 (emphasis added). Both of the leases in this case covered terms not exceeding one year, so Patricia was not required to have written authorization to execute the contracts.

The leases were valid, written contracts governing the subject matter of the controversy, [2] and they expressly provided that any repairs to the Property would be "at Tenant's expense," and stated that any alterations and improvements "shall be maintained in place upon the termination or non-renewal of said Lease." Terron testified that the parties negotiated for these provisions, and that rent would have been higher if they were not included in the leases. The leases also contained integration clauses, which are conclusive evidence that a contract is complete. *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 502; 579 NW2d 411 (1998). Under these circumstances, the trial court did not err by refusing to grant plaintiff equitable relief under the doctrines of promissory estoppel and unjust enrichment.[3]

Affirmed.

/s/ Henry William Saad
/s/ Stephen L. Borrello
/s/ Michael F. Gadola

---

[2] Even if the leases were invalid, estoppel could not be applied to impose a land contract as an exception to the statute of frauds because Michigan courts have "consistently held that title to real estate may not be created by estoppel." *Stevens v De Bar*, 229 Mich 251, 253; 200 NW 978 (1924); see also *Colonial Theatrical Enterprises v Sage*, 255 Mich 160, 171; 237 NW 529 (1931). Plaintiff's estoppel claim fails as a matter of law because plaintiff cannot satisfy the requirement of a signed and written document conveying an interest in the Property.

[3] To the extent that plaintiff argues that an April 3, 2013 letter from defendants' attorney to plaintiff's attorney constituted a binding agreement for the sale of the Property, this argument lacks merit. Plaintiff does not identify this issue in its statement of the questions presented or provide any citation to supporting authority, rendering this issue abandoned on appeal. *Caldwell v Chapman*, 240 Mich App 124, 132; 610 NW2d 264 (2000). Moreover, although defendants' attorney signed the letter, there is no evidence that defendants ever gave her written authorization to enter a land contract on their behalf, which would have been required to create a valid land contract under MCL 566.108.