KNOKE v EAST JACKSON PUBLIC SCHOOL DISTRICT

Docket No. 138530. Submitted April 13, 1993, at Lansing. Decided
    May 26, 1993; approved for publication September 9, 1993, at
    9:00 A.M.

The Michigan Employment Relations Commission affirmed a
    hearing referee's decision that dismissed charges brought by
    Richard Knoke, a counselor for the East Jackson Public School
    District, against the school district, the East Jackson Education
    Association, and the Jackson County Education Association,
    alleging that the associations, collectively referred to as the
    union, breached the duty of fair representation and that the
    school district breached the parties' collective bargaining agree-
    ment. Knoke appealed.

The Court of Appeals held:

1. The MERC's findings that the union did not breach its duty
    to fairly represent Knoke are supported by competent, mate-
    rial, and substantial evidence on the record considered as a
    whole.

2. The record does not support Knoke's argument that the
    union intended to pursue his grievances but failed to comply
    with the applicable time limits, or decided to abandon the
    grievances in bad faith. The union took the steps necessary to
    preserve the grievances and to extend the time limits for
    arbitration, aggressively pursued resolution of the underlying
    dispute, and adequately weighed the requisite factors in decid-
    ing whether to pursue the grievances.

3. Knoke did not demonstrate any breach of the collective
    bargaining agreement, and, therefore, could not prevail on a
    claim of unfair representation.

4. The MERC did not err in denying Knoke's motion to add his
    posthearing exhibits to the record.

Affirmed.

REFERENCES
Am Jur 2d, Administrative Law §§ 525, 678-691; Labor Relations
    §§ 398-410.
See ALR Index under Administrative Law; Labor and Employment.

1. ADMINISTRATIVE LAW — EMPLOYMENT RELATIONS COMMISSION — APPEAL.

Findings of the Michigan Employment Relations Commission are conclusive if supported by competent, material, and substantial evidence on the record considered as a whole (MCL 423.216[e]; MSA 17.455[16][e]).

2. LABOR RELATIONS — UNIONS — GRIEVANCES — DUTY OF FAIR REPRESENTATION.

A union has discretion to decide which grievances will be submitted to arbitration and which will be settled, and must be permitted to assess each grievance to determine its individual merit; the union may consider the good of the general membership and weigh the burden on the contractual grievance machinery, the amount at stake, the likelihood of success, the cost, and the desirability of winning the award against considerations that affect the membership as a whole; the union must act without fraud, bad faith, hostility, discrimination, arbitrariness, caprice, gross nonfeasance, collusion, bias, prejudice, wilful, wanton, wrongful and malicious refusal, personal spite, ill will, bad feelings, improper motives, misconduct, overreaching, unreasonable action, or gross abuse of its discretion.

3. LABOR RELATIONS — UNIONS — DUTY OF FAIR REPRESENTATION.

A member of a labor union, in order to prevail on a claim of unfair representation against the union, must establish a breach of the duty of fair representation and a breach of the collective bargaining agreement.

4. ADMINISTRATIVE LAW — EMPLOYMENT RELATIONS COMMISSION — HEARINGS — EVIDENCE.

The Michigan Employment Relations Commission may reopen the record in a case and receive further evidence after the close of a hearing where the evidence is newly discovered and was unavailable through reasonably diligent discovery at the time of the earlier hearing (1979 AC, R 423.468[2]).

*Anthony A. Muraski,* for Richard Knoke.

*White, Beekman, Przybylowicz, Schneider & Baird, P.C.* (by *Thomas A. Baird*), for East Jackson Education Association and Jackson County Education Association.

*Thrun, Maatsch & Nordberg, P.C.* (by *(Philip A. Erickson)*), for East Jackson Public School District.

Before: WHITE, P.J., and CAVANAGH and JANSEN, JJ.

PER CURIAM. Charging party Richard Knoke appeals as of right a decision of the Michigan Employment Relations Commission dismissing charges against respondents of breach of a duty of fair representation and breach of a collective bargaining agreement. He claims that the MERC's findings that respondent labor organizations did not breach their duty of fair representation and that the school district did not breach its contract were not supported by substantial evidence. He also claims that the MERC erred in denying his motion to admit a posthearing response brief and exhibits. We affirm.

Knoke worked as a middle school counselor for respondent East Jackson Public School District. Respondents East Jackson Education Association and Jackson County Education Association (hereafter the union) represented Knoke in collective bargaining matters. In 1981, Knoke began to experience symptoms he attributed to changes in the ventilation system of East Jackson Middle School, where he worked. As a result, Knoke missed seven weeks of work in the spring of 1982. The following school year, Knoke worked until February 1983, but then stopped working for seventeen months. During this time, Knoke exhausted his individual sick-leave and sought additional days from the sick leave bank created under the collective bargaining agreement, submitting medical verification from his own physicians. He also saw two school-board-approved physicians, who found no illness. The school board refused Knoke's request for banked sick-leave days. Knoke's resulting grievance against the school district went to arbitration. Because of the conflicting evidence, the arbitrator

could not determine whether Knoke in fact was sick. However, she ruled that Knoke was nevertheless entitled to the sick-leave days because, under the terms of the 1981-83 agreement, the school district could not deny sick leave from the sick-leave bank solely by relying on the reports of school-board-approved doctors.

In January 1984, Knoke again requested sick leave to cover his absence during the first half of the 1983-84 school year. The school district refused his request, its position buttressed by changed terms in the 1983-86 bargaining agreement that permitted the district to request and rely on medical verification from school-board-approved doctors. That agreement also provided that sick leave would not accumulate during an unpaid leave of absence. The school board denied Knoke's subsequent grievance on March 12, 1984.

Under the terms of the new contract, the union had thirty days after denial of a grievance in which to file a written request for arbitration, notifying both the school board and an arbitrator. Union grievance officer William Owen testified that on April 13, 1984, he notified the school board in writing of the union's intent to pursue arbitration. He also orally agreed with the school district to hold the arbitration in abeyance while other related matters were pending. Owen also wrote to the American Arbitration Association, stating that the school district had agreed to hold the arbitration process in abeyance.

In the meantime, the union was pursuing a class grievance on behalf of a group of teachers, including Knoke, claiming that the school building was an environmental hazard and seeking the right either to draw on sick-leave-bank days or to be transferred. On March 16, 1984, an arbitrator issued an opinion that found that the union failed

to sustain its burden of proving the existence of a recognized health hazard in the school building. At about that time, Knoke filed another grievance concerning the school district's refusal to transfer him to a different school, which the school board denied on August 13, 1984, on the ground that Knoke was not qualified for the available positions. Knoke testified that the union informed him that it would pursue arbitration of this grievance as well.

In September 1984, Knoke met with Owen and the union's local president about the status of his grievances. Although Knoke testified that the two officials stated they had "until infinity" to take the grievances to arbitration, Owen testified that he told Knoke that the grievances would not be taken to arbitration, but that the union would use the arbitration requests as leverage in its negotiations with the school district.

In October 1984, Owen was succeeded by Larry Fischer, who notified the school superintendent that the union intended to submit Knoke's two grievances to arbitration. The superintendent responded that the arbitration deadline had passed.

On April 10, 1985, Knoke filed a petition with the MERC, charging the union with unfair labor practices for failing to process the two grievances to arbitration. The petition also charged the school district with failing to pay lost wages and benefits, including sick days and sick-bank days, failing to transfer Knoke to another school, and discriminating against Knoke for exercising his statutory rights. After a bifurcated hearing spanning four years, on April 30, 1990, a hearing referee issued a decision and a recommended order dismissing the charges against respondents. The decision and order were based on the referee's findings that, in light of facts indicating no established illness and

Knoke's inadequate qualifications for transfer, as well as a valid arbitration decision regarding the merits of Knoke's "sick building" complaint, the union had not acted unfairly in failing to take Knoke's grievances to arbitration because the union had no reasonable expectation of prevailing. The referee also found that the record did not justify a conclusion that the school district took any action against Knoke because of his grievances.

Knoke submitted exceptions to the decision and recommended order, to which respondents filed response briefs. Knoke then submitted a reply brief along with attached exhibits, which the union moved to strike. In his answer, Knoke moved to admit the exhibits. On February 20, 1991, the MERC issued a decision and order denying admission of the exhibits and affirming the hearing referee's recommendation. Knoke now appeals this decision and order.

Knoke's first argument is that the MERC's findings that the union did not breach its duty of fair representation and that the school district did not breach the collective bargaining agreement were not supported by substantial evidence. Although Knoke raises the issue that the MERC erred in concluding that the school district did not breach the contract in his statement of issues, he does not address this assertion in his brief. This issue has therefore been abandoned. *Midland v Helger Construction Co, Inc,* 157 Mich App 736, 745; 403 NW2d 218 (1987). Moreover, Knoke cannot pursue his breach of contract claim against the school district unless he is successful in his claim of breach of the duty of fair representation. *Saginaw v Chwala,* 170 Mich App 459, 464-465; 428 NW2d 695 (1988); *Pearl v Detroit,* 126 Mich App 228, 238-239; 336 NW2d 899 (1983). With regard to the fair

representation claim, Knoke argues that, rather than supporting the conclusion that the union purposefully and in good faith decided not to pursue the grievances, the record establishes that the union's failure to pursue the grievances was due to negligence in missing the deadline, or an arbitrary and bad-faith decision not to pursue "air quality" grievances, especially Knoke's. Knoke also argues that the MERC engaged in speculation and conjecture in reaching its conclusions. We disagree.

The MERC affirmed the referee's finding that the union had not breached its duty to fairly represent Knoke. The MERC's findings of fact are conclusive if supported by competent, material, and substantial evidence on the record considered as a whole, and will be accorded due deference by this Court. MCL 423.216(e); MSA 17.455(16)(e); *Amalgamated Transit Union, Local 1564, AFL-CIO v Southeastern Michigan Transportation Authority,* 437 Mich 441, 450; 473 NW2d 249 (1991). We conclude that the MERC's findings are supported by competent, material, and substantial evidence on the record considered as a whole.

Knoke did not establish that the union breached its duty to fairly represent him. A union has considerable discretion to decide which grievances shall be pressed to arbitration and which shall be settled, and must be permitted to assess each grievance with a view to individual merit. The union may consider the good of the general membership and has discretion to weigh the burden on the contractual grievance machinery, the amount at stake, the likelihood of success, the cost, and the desirability of winning the award against considerations that affect the membership as a whole. *Lowe v Hotel & Restaurant Employees Union,* 389

Mich 123, 146; 205 NW2d 167 (1973). However, the union must act without fraud, bad faith, hostility, discrimination, arbitrariness, caprice, gross nonfeasance, collusion, bias, prejudice, wilful, wanton, wrongful and malicious refusal, personal spite, ill will, bad feelings, improper motives, misconduct, overreaching, unreasonable action, or gross abuse of its discretion in processing or refusing or failing to process a member's grievance. *Id.* at 146-147; *Goolsby v Detroit,* 419 Mich 651, 663-664; 358 NW2d 856 (1984).

Knoke argues that the record clearly shows that the union intended to pursue his grievances but failed to comply with the time limits, or decided to abandon the grievances in bad faith. However, the record indicates that the union followed the steps necessary to preserve the grievances and to extend the time limits for arbitration. It also aggressively pursued resolution of the underlying dispute by filing a class grievance on behalf of Knoke and others, and continued to discuss the building and possible transfers with the school district. According to the testimony of union grievance officer Owen, after arbitration with regard to the merits resulted in a ruling against the union, the union decided not to take Knoke's grievances to arbitration. The referee found Owen's testimony credible, and the MERC agreed. In response to Knoke's argument that correspondence by Fischer and the superintendent shows that the union intended to pursue the grievances but missed the deadlines, the MERC discussed a contrary view of the evidence that would support a conclusion that Fischer, Owen's successor, may have mistakenly refiled for arbitration after misinterpreting instructions that Owen had left for him. On appeal, Knoke mischaracterizes this discussion as speculation and conjecture. After reviewing the evidence, the MERC saw

no reason to overturn the referee's favorable appraisal of Owen's credibility. Nor do we.

The MERC also agreed with the referee's conclusion that the record supports a finding that the union adequately weighed the *Lowe* factors in deciding whether to pursue the grievances. We agree. Owen's testimony, taken in conjunction with the underlying weaknesses in Knoke's grievances, supports the MERC's conclusions in this regard.

Lastly, to prevail on a claim of unfair representation, a complainant must establish not only a breach of a union's duty of fair representation but also a breach of the collective bargaining agreement. *Martin v East Lansing School Dist,* 193 Mich App 166, 181; 483 NW2d 656 (1992).

Knoke was unable to demonstrate a breach of the collective bargaining agreement. As observed by the referee and the MERC, the 1983-86 agreement permitted the school board to deny a request for sick-leave-bank days on the basis of reports from school-board-approved doctors. The record includes two medical evaluations indicating that Knoke's symptoms were not environmentally induced, which provided one of the school board's bases for denying Knoke's request. With respect to Knoke's claim regarding the school board's denial of his transfer request, the referee observed that Knoke admittedly was not qualified for any position that was open or available. The collective bargaining agreement provided that in filling a vacancy, the school board would consider certification, length of service, and qualifications. The record includes both the superintendent's testimony that Knoke was refused a transfer because he was not sufficiently qualified and a copy of the collective bargaining agreement itself. Knoke of-

fered no evidence that there was a specific job to which he should have been transferred.

Knoke next argues that the MERC erred in denying his motion to admit his posthearing response brief and exhibits. Again, we disagree. First, we note that the MERC did admit his brief, although it denied admission of the exhibits. Under the Employment Relations Commission's Rule 68(2), the MERC may reopen the record in a case and receive further evidence after the close of a hearing. 1979 AC, R 423.468(2). In denying Knoke's motion to admit the exhibits, the MERC relied on one of its earlier opinions requiring the evidence to be newly discovered and to have been unavailable through reasonably diligent discovery at the time of the earlier hearing.[1] In this appeal, Knoke does not contest this requirement, but merely claims that justice and equity demand admission of the evidence because it purports to tell "the full story" and offers an explanation for the school board's conduct.

The exhibits consist of (1) an August 1982 article from the Jackson Citizen Patriot concerning ventilation problems at the East Jackson Middle School, (2) an April 1989 school district document assuring the Office for Civil Rights (OCR) that the school district would make certain accommodations for Knoke's illness, and (3) the counterpart OCR letter, also from April 1989, finding that Knoke was a handicapped person as defined by federal regulations and that the school district had violated those regulations by failing to provide reasonable accommodations for Knoke's handicap.

We note first that Knoke cites no authority for the contention that the administrative rule permitting the MERC to reopen the record actually

---

[1] *City of Lansing v Fraternal Order of Police, Lodge 141,* 1974 MERC Lab Op 625.

mandates such reopening under certain circumstances. We also note that the additional exhibits were indeed available and discoverable during the pendency of the original administrative hearing. Finally, and most importantly, the exhibits add nothing to the substance of Knoke's petition against respondents. We thus conclude that the MERC did not err in denying Knoke's motion to add his posthearing exhibits to the record.

Affirmed.