# STATE OF MICHIGAN

# COURT OF APPEALS

---

CALHOUN INTERMEDIATE EDUCATION
ASSOCIATION MEA/NEA,

        Respondent-Appellant,

v

CALHOUN INTERMEDIATE SCHOOL
DISTRICT,

        Charging Party-Appellee.

FOR PUBLICATION
January 7, 2016
9:10 a.m.

No. 323873
MERC
LC No. 12-000009

---

Before: SHAPIRO, P.J., and O'CONNELL and WILDER, JJ.

PER CURIAM.

Respondent Calhoun Intermediate Education Association (the Association) appeals by right the decision and order of the Michigan Employment Relations Commission (MERC), granting charging party Calhoun Intermediate School District's (the District) motion for summary disposition. For the reasons stated in this opinion, we affirm.

The Association represents a bargaining unit of teachers and other professionals employed by the District. The parties' most recent collective bargaining agreement (CBA) expired on June 30, 2011. The expired CBA included terms that addressed teacher evaluation, teacher discipline, teacher layoff and recall procedures, and the procedure for filling vacancies.

On May 25, 2011, the parties commenced negotiations for a successor CBA. The parties met on two additional occasions before the Legislature enacted 2011 PA 103, which went into effect on July 19, 2011. Act 103 amended § 15(3) of the Public Employment Relations Act (PERA)[1] by adding subsections 15(3)(j)-(p), which made certain matters prohibited subjects of bargaining for public school employers and the unions representing school employees. See MCL 423.215(j)-(n). The parties agree that the amended language in § 15(3) affected the enforceability of the disputed provisions of the expired CBA.

---

[1] MCL 423.201 *et seq*.

-1-

On August 15, 2011, the District submitted a revised comprehensive proposal to the Association. The revised proposal limited the applicability of some of the disputed provisions to "non-tenured employees" and "probationary employees (other than probationary employees who are teachers)." The proposal also included language stating:

> Nothing in this proposal should be regarded as indicating that the Board of Education proposes or otherwise intends to continue any provisions of the 2009-2011 Master Agreement which pertain to prohibited subjects of bargaining in the successor collective bargaining agreement, to the extent that such provisions pertain to prohibited subjects of bargaining. Further, the Calhoun Intermediate Education Association is hereby also notified that the Board of Education will not enter into or execute any successor collective bargaining agreement to the 2009-2011 Master Agreement which contains provisions embodying or pertaining to any prohibited subject of bargaining, as are more particularly set forth in Section 15(3) of the Public Employment Relations Act.

The Association responded that the language could not be removed without bargaining and that it would not bargain over prohibited subjects. The Association further stated that any provision in the successor CBA that pertained to a prohibited subject would be unenforceable and, as a result, those provisions could remain in the contract. The Association further suggested that the disputed provisions be moved to an appendix, but the District rejected that suggestion.

On September 6, 2011, the Association gave the District a package proposal that included provisions pertaining to the prohibited subjects. On October 3, 2011, both parties presented proposals. The District's proposal expressly stated that the District would not enter into a successor CBA that included any provisions pertaining to the prohibited subjects. The Association's package proposal, however, indicated that the provisions governing prohibited subjects of bargaining had been moved from the contract, but were included in a letter of agreement as an appendix to the CBA. The Association stated that the language would be moved back into the contract if 2011 PA 103 was found to be invalid, was repealed, or was modified by the Legislature. The District rejected the proposal and the Association withdrew it.

After the October 3 bargaining session, the parties entered into mediation through the MERC and were able to reach tentative agreements on a number of issues. However, on December 9, 2011, the District gave the Association another comprehensive proposal stating again that it would not enter into a successor CBA that included provisions addressing prohibited subjects. Further, the District warned the Association that further maintenance or presentation of proposals embodying the prohibited subjects would be considered a violation of the duty to bargain in good faith. On January 9, 2012, in spite of the District's warning, the Association presented another package proposal that included the disputed language. Further, on January 18, 2012, Michigan Education Association General Counsel, Arthur Przybylowicz, appeared before the District's Board of Education and requested that the language concerning prohibited subjects to be carried over from the expired CBA into any successor agreement.

On January 24, 2012, the District submitted another comprehensive proposal to the Association. The proposal incorporated the parties' tentative agreements on contract language,

but it again stated that the District would not enter into an agreement containing any provisions addressing prohibited subjects.

On February 9, 2012, the parties met with a mediator, but neither had a new proposal to present. At the conclusion of the meeting, the Association filed a fact finding petition indicating that the unresolved issues were "wages, insurance, sick leave, recognition clause, and duration of agreement."

On February 21, 2012, the District filed a charge alleging that the Association committed an unfair labor practice in violation of the PERA when it insisted on including unenforceable language in the successor CBA.

On February 29, 2012, shortly after the instant charge was filed, the Association presented another package proposal that retained the disputed language.

On April 26, 2012, the District filed a motion for summary disposition. Oral argument on the motion was held on May 29, 2012. On August 24, 2012, the administrative law judge (ALJ) assigned to hear the charge, issued a written decision and recommended order finding that there were no material facts in dispute. She recommended that the MERC order the Association to cease and desist from insisting as a condition of its agreement to a successor contract that the District agree to include provisions pertaining to prohibited subjects. She also recommended that the Association be ordered to cease and desist from bargaining in bad faith and obstructing and impeding the bargaining process by making proposals involving the prohibited subjects even after the District unequivocally refused to bargain over those proposals.[2]

The Association filed exceptions, and the District filed a cross-exception. On September 15, 2014, the MERC adopted the ALJ's recommendation, finding the Association had committed an unfair labor practice.

The parties agree that the disputed provisions are prohibited subjects of bargaining under § 15(3) of the PERA. However, the Association argues that provisions pertaining to the prohibited subjects can be included in the successor CBA. The Association also argues that, because its insistence on maintaining the disputed provisions in the successor CBA did not result in an impasse, the MERC could not make a finding that it engaged in an unfair labor practice.

"We review MERC decisions pursuant to Const 1963, art 6, § 28, and MCL 423.216(e)." *Van Buren Co Ed Ass'n v Decatur Pub Sch*, 309 Mich App 630, 639; ___ NW2d ___ (2015) (quotation omitted). The MERC's factual findings are "conclusive if they are supported by competent, material, and substantial evidence on the record considered as a whole." *Police Officers Ass'n of Mich v Fraternal Order of Police, Montcalm Co Lodge No 149*, 235 Mich App 580, 586; 599 NW2d 504 (1999). "MERC's legal determinations may not be disturbed unless

---

[2] The ALJ also dismissed an allegation that the Association acted in bad faith by proposing an illegal duration clause in the proposed successor CBA. That decision has not been challenged on appeal.

they violate a constitutional or statutory provision or they are based on a substantial and material error of law." *Van Buren Co Ed Ass'n*, 309 Mich App at 639. We review de novo the MERC's legal rulings. *St Clair Co Ed Ass'n v St Clair Intermediate Scl Dist*, 245 Mich App 498, 513; 630 NW2d 909 (2001).

The MERC found that the Association breached the duty to bargain in good faith when it repeatedly insisted on including provisions in a successor CBA that it acknowledged were prohibited under § 15(3) of PERA. In its decision and order, the MERC reasoned:

> To determine whether a party has bargained in good faith, we examine the totality of the circumstances to decide whether a party has approached the bargaining process with an open mind and a sincere desire to reach an agreement. *Grand Rapids Pub Museum*, 17 MPER 58 (2004); *City of Springfield*, 1999 MERC Lab Op 399, 403; *Unionville-Sebewaing Area Sch*, 1988 MERC Lab Op 86; *Kalamazoo Pub Sch*, 1977 MERC Lab Op 771, 776. In the present case, the record establishes that the Union continued to insist, as a condition of its agreement on a successor to the 2009-2011 collective bargaining agreement, that the Employer agree to include provisions on prohibited bargaining subjects. As a result of the Union's continued insistence on including the prohibited subjects in its bargaining proposals, the Employer was unable to assess whether the position the Union took on other issues was sincere or merely an attempt to urge the Employer to bargain over the prohibited topics. The Union's conduct obstructed and impeded the bargaining process and made resolution of the parties' dispute more difficult than it otherwise would be.

> * * *

> In conclusion, we agree with the ALJ that the Union violated its duty to bargain in good faith by unlawfully insisting as a condition of agreement that the Employer agree to include provisions on prohibited topics in the contract. We further agree with the ALJ that the Union violated its duty to bargain in good faith, and obstructed and impeded the bargaining process, by continuing to make proposals dealing with prohibited subjects after the Employer unequivocally refused to bargain over these proposals.

After review of the record, and giving due deference to the MERC's findings of fact, see *Police Officers Ass'n of Mich*, 235 Mich App at 586, we affirm the MERC's finding.

"Collective bargaining as a process requires both parties to confer in good faith—to listen to each other." *Mich State AFL-CIO v Employment Relations Comm Mich Ed Ass'n*, 453 Mich 362, 380; 551 NW2d 165 (1996) (opinion by BRICKLEY, C.J.), citing MCL 423.215(1).[3] "In

---

[3] MCL 423.215(1) provides:

> A public employer shall bargain collectively with the representatives of its employees as described in [MCL 423.211] and may make and enter into

essence the requirements of good faith bargaining is simply that the parties manifest such an attitude and conduct that will be conductive to reaching an agreement." *Detroit Police Officers Ass'n v Detroit*, 391 Mich 44, 54; 214 NW2d 803 (1974). In *Detroit Police Officers*, our Supreme Court explained that the subjects to a collective bargaining agreement can be classified as mandatory, i.e., subjects that the parties are required to bargain over, permissive, i.e., subjects that the parties may bargain over, and illegal or prohibited,[4] i.e., subjects that the parties may discuss but that are unenforceable if included in a contract. *Id*. at 54-55 n 6.

Although the parties may "discuss" prohibited subjects, section 15(3) of PERA prohibits them from "bargaining" over them. Further, MCL 423.215(4) provides:

> (4) Except as otherwise provided in subsection (3)(f), the matters described in subsection (3) are prohibited subjects of bargaining between a public school employer and a bargaining representative of its employees, and, for the purposes of this act, *are within the sole authority of the public school employer to decide*. [emphasis added.]

Thus, although the Association was free to "discuss" the prohibited subjects in this case, once the District made it clear that it did not want any provisions pertaining to the prohibited subjects to be included in the successor CBA, the Association had no authority to continue to insist that the language or any modification of it was maintained in the successor CBA. The District made its position clear on August 15, 2011, when it submitted a revised comprehensive proposal removing the provisions pertaining to prohibited subjects from the CBA and providing express notice that it would not sign a successor agreement containing provisions pertaining to the prohibited subjects. Thereafter, the Association presented package proposals containing the disputed language on September 6, 2011, October 3, 2011, January 9, 2012, and February 29, 2012.[5] In doing so, the Association crossed the line from discussing a prohibited subject, which

collective bargaining agreements with those representatives. Except as otherwise provided in this section, for the purposes of this section, to bargain collectively is to perform the mutual obligation of the employer and the representative of the employees to meet at reasonable times and confer in good faith with respect to wages, hours, and other terms and conditions of employment, or to negotiate an agreement, or any question arising under the agreement, and to execute a written contract, ordinance, or resolution incorporating any agreement reached if requested by either party, but this obligation does not compel either party to agree to a proposal or make a concession.

[4] Illegal subjects are synonymous with prohibited subjects. See *Mich State AFL-CIO*, 453 Mich at 380 (opinion by BRICKLEY, C.J.).

[5] The Association argues that not all provisions in a successor CBA are necessarily bargained for provisions. It asserts that once a CBA exists, the parties need not start from scratch in crafting a new CBA. Instead, the parties may "generally determine which provisions will be bargained for in the successor agreement," and then the provisions that are not going to be bargained over are simply "rolled over" into the new agreement. However, given that the District in this case wants the disputed provisions removed and the Association wants the disputed provisions to be

it is allowed to do, and began bargaining over it in spite of the District's clear statements that it would not include such language in the successor CBA. We conclude, as did the MERC, that the Association's insistence on maintaining prohibited language in the successor CBA is an act of bad faith.

Finally, we reject the Association's assertion that the employer was barred from filing an unfair labor practice complaint until an impasse was reached. This argument puts the cart before the horse. The issue was not a mandatory subject of bargaining—indeed, it was a prohibited subject of bargaining—so there is no basis to require that the parties bargain to impasse concerning it. Demanding that the right to discuss a prohibited subject of bargaining extend to a requirement that the discussion continue until it results in a bargaining impasse is fundamentally a demand for bargaining. Therefore, the District did not have to wait for an impasse to bring its claim.

We affirm the MERC's finding that the Association committed an unfair labor practice.


/s/ Douglas B. Shapiro
/s/ Peter D. O'Connell
/s/ Kurtis T. Wilder

---

maintained, we are at a loss to understand how this provision can simply be "rolled over" into the new agreement without the parties agreeing on it. Further, the Association fails to explain how, after a party with sole authority as to a particular issue repeatedly declines to change its decision, the other party's further insistence on that change as part of the bargaining process does not become a demand to bargain on that issue.