*If this opinion indicates that it is "FOR PUBLICATION," it is subject to
revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

SUPERIOR TOWNSHIP FIRE FIGHTERS UNION
LOCAL 3292 INTERNATIONAL ASSOCIATION
OF FIRE FIGHTERS,

        Respondent-Appellee,

v

LEE RUDOWSKI,

        Charging Party-Appellant.

UNPUBLISHED
June 20, 2024

No. 365650
MERC
LC No. 21-I-1764-CU

Before: O'BRIEN, P.J., and M. J. KELLY and FEENEY, JJ.

PER CURIAM.

In this case arising under Michigan's public employment relations act (PERA), MCL 423.201 *et seq.*, charging party appeals as of right the decision and order of the Michigan Employment Relations Commission (MERC) dismissing charging party's claim against respondent for breach of the duty of fair representation. We affirm.

## I. BACKGROUND

Charging party brought this action after he was discharged from his employment as a fire fighter for Superior Township (the Township). Charging party began working for the Township as a firefighter in January 2019. On January 11, 2020, charging party was arrested for, and later charged with, operating a motor vehicle while intoxicated (OWI) under the Michigan "super-drunk" OWI statute, MCL 257.625(1)(c). The following week, charging party told respondent's local president, Lance Pierce, about his arrest. Pierce told charging party that there was no provision in the fire fighters' collective bargaining agreement (CBA) or the Township's employee handbook that required an employee to report an off-duty arrest. According to charging party, on the basis of this advice, he never disclosed information regarding his arrest to the fire department.

About a year later, on February 3, 2021, charging party sent a text message to Pierce saying that he "might settle" his case, and that he was "pretty sure" he would "have nothing to report" to the fire department because his plea would not include a "license suspension" or a "dui

-1-

conviction." Charging party ended the text stating, "I would hope at the end of the day you respect me and my personal life and leave it outside of work."

On February 4, 2021, charging party pleaded guilty to operating while impaired by liquor (OWI), MCL 257.625(3). As part of the plea agreement, charging party had restrictions placed on his driver's license, under which he was only allowed to drive to work. At that time, charging party believed that he could continue working as long as he did not drive fire-department vehicles and only rode in them as a passenger. Charging party was scheduled to be sentenced on March 8, 2021. Charging party testified that he had planned to tell Township fire department Chief Victor Chevrette about his conviction around the time of his sentencing. On February 26, 2021, Chief Chevrette was informed through the Michigan Secretary of State that charging party had restrictions placed on his driver's license. That same day, Chief Chevrette sent a memo to charging party stating that he was indefinitely prohibited from driving any fire-department vehicle.

On March 11, 2021, charging party was suspended from work. That same day, charging party met with Pierce, Chief Chevrette, and the Township supervisor, Ken Schwartz. Chief Chevrette and Schwartz told charging party that he would be discharged from his employment due to his failure to disclose his drunk-driving arrest, conviction, and driving restrictions to the fire department. According to charging party, he told Schwartz that he informed Pierce about the criminal charge more than a year earlier, but Schwartz was not interested in that information. Charging party was given the option to either resign or be discharged.

The same day as this meeting, respondent's grievance commission, which included Pierce, held a meeting at which they discussed with respondent's attorney options for dealing with charging party's situation. During the meeting, the union officials learned that taking a grievance from charging party to arbitration would likely cost respondent between $8,000 and $9,000. At some point, respondent negotiated terms with the Township under which charging party, in exchange for resigning, would receive a neutral job reference to future employers and be paid $11,536.20 for his accumulated leave time.

Over the next week, respondent's grievance commission held several more meetings to discuss how to handle charging party's situation. There was also another meeting between charging party, Pierce, Chief Chevrette, and Schwartz.

Charging party was given until March 19, 2021, to decide whether he wanted to resign or be discharged. Charging party told respondent's grievance commission that he would not resign and wished to be discharged then file a grievance against the Township. In accordance with this representation, when charging party met with Pierce, Chief Chevrette, and Schwartz on March 19, 2021, he refused to resign and was discharged.

On March 29, 2021, respondent brought a grievance under the CBA on behalf of charging party to contest the discharge. Charging party's grievance was based on a provision of the CBA prohibiting the discipline of individuals without cause. Charging party sought reinstatement to his position and backpay. On April 5, 2021, respondent held a members' meeting at which an update on charging party's grievance was offered. Respondent explained that Step 1 of the grievance process was to take the grievance to Chief Chevrette, who would have 10 days to decide the grievance. Step 2 of the process was to take the grievance to Schwartz, who would also have 10

days to decide the grievance. If the grievance was denied at each step, the union members would then have 45 days to vote on whether to take the grievance to arbitration.

On April 5, 2021, Chief Chevrette denied charging party's grievance, offering only a brief recitation of the allegations against charging party. Respondent then moved charging party's grievance to Step 2 of the process. On April 15, 2021, Schwartz denied charging party's grievance, offering a lengthy explanation for why discharge was necessary on the basis of safety and public-relations concerns.

As charging party's grievance entered the arbitration stage, charging party understood that advancing his grievance to arbitration required approval by a majority of union membership. Before union membership was set to vote on advancing charging party's grievance, respondent asked charging party if respondent could share with the membership the documents and exhibits considered during Step 2. Charging party did not consent to sharing this information with the union membership.

On April 26, 2021, a representative of the Michigan Bureau of Fire Services Fire Fighter Training Division sent a message to charging party stating that charging party's training certification that permitted him to drive fire-department vehicles was still valid, but the department could nevertheless revoke his driving privileges. Charging party never provided the information relayed in this message to respondent.

On May 5, 2021, respondent held an emergency union meeting with its members. The members were told that, despite being asked twice if the Step 2 denial letter could be shared with members, charging party would not give his permission for the letter to be shared. The members voted by ballot, and the majority chose to not pursue arbitration on charging party's grievance. After the meeting concluded, the executive board told charging party by telephone that the union members had voted and respondent would not pursue arbitration on charging party's behalf.

On September 10, 2021, charging party filed an unfair labor practice claim against respondent with MERC, alleging that respondent violated its duty of fair representation under PERA. Charging party claimed that respondent violated its duty of fair representation because, if respondent had arbitrated plaintiff's grievance, there was a high likelihood that there would have been a favorable outcome for charging party. Charging party argued that he was led astray by the advice of Pierce and that the decision to not arbitrate was arbitrary because there was at least one other fire fighter for the Township who had some type of alcohol-related driving offense.

On October 28, 2021, a MERC administrative law judge (ALJ) held an evidentiary hearing on charging party's claim. Charging party represented himself and was the only witness who testified, recounting his version of the events that led to his discharge and grievance. Respondent offered numerous exhibits at the hearing, seeking to explain charging party's termination and the subsequent grievance proceedings through documentary evidence.

On November 30, 2022, the ALJ entered a decision and recommended order concluding that respondent had not breached its duty of fair representation. The ALJ reasoned that respondent pursued charging party's grievance through Step 2, respondent's grievance commission and members held several meetings to discuss the best strategy for pursuing the grievance, and it was

ultimately the union members who decided against taking charging party's grievance to arbitration. The ALJ found that Pierce's advice to charging party did not breach the duty of fair representation because Pierce only told charging party that there was no reporting policy. But even if Pierce did tell him not to report the arrest, the ALJ's conclusion would not change, it explained, because such conduct amounted to mere negligence, which did not constitute a breach of the duty of fair representation. The ALJ recommended that charging party's claim be dismissed.

On December 27, 2022, represented by counsel for the first time, charging party filed exceptions to the ALJ's decision and proposed order. Charging party took exception to the ALJ's findings that charging party could not drive fire-department vehicles, that Pierce did not advise charging party against reporting his arrest, and that charging party failed to provide relevant documents to the union members before their vote on whether to arbitrate charging party's grievance.

Along with his exceptions, charging party filed a brief in opposition to the ALJ's decision and recommended order. Charging party argued that even if Pierce's advice to charging party was merely negligent, that was not dispositive to whether respondent breached its duty of fair representation. Charging party also argued that respondent violated its duty of fair representation because, when the union membership voted on whether to proceed with arbitration, respondent's inadequate investigation into the situation led the membership to erroneously believe that (1) charging party could not drive a fire-department vehicle under his license restrictions and (2) that charging party had been convicted of a felony.

On February 6, 2023, respondent filed a brief in support of the ALJ's decision and recommended order, arguing that the ALJ reached the correct factual findings and conclusions of law.

On March 17, 2023, MERC entered a decision and order that affirmed the ALJ's decision and adopted the recommended order. MERC reasoned that respondent filed a grievance, proceeded with it through Step 2 of the grievance process, and held meetings to determine strategy. Any failure to provide information to the union membership was, according to MERC, because respondent never received charging party's permission to do so. MERC also determined that any errors by Pierce amounted to, at most, ordinary negligence and did not meet the standard for establishing a breach of the duty of fair representation. MERC concluded that charging party failed to carry his burden of establishing a breach of the duty of fair representation and that dismissal of the claim was warranted.

This appeal followed.

## II. STANDARD OF REVIEW

This Court reviews MERC's decisions under the deferential standard set forth in 1963 Const, art 6, § 28 and MCL 423.216(e). *Calhoun Intermediate Sch Dist v Calhoun Intermediate Ed Ass'n*, 314 Mich App 41, 46; 885 NW2d 310 (2016). This review is limited. *Saginaw Ed Ass'n v Eady-Miskiewicz*, 319 Mich App 422, 443; 902 NW2d 1 (2017). "MERC's factual findings are conclusive if they are supported by competent, material, and substantial evidence on the record considered as a whole." *Calhoun Intermediate Sch Dist*, 314 Mich App at 46 (quotation marks

and citation omitted). "MERC's legal determinations may not be disturbed unless they violate a constitutional or statutory provision or they are based on a substantial and material error of law." *Id*. (quotation marks and citation omitted). Questions of law are reviewed de novo. *Id*.

## III. DUTY OF FAIR REPRESENTATION

Charging party argues that MERC erred when it determined that respondent did not breach its duty of fair representation. We disagree.

PERA governs public employee labor relations, "reflecting legislative goals to protect public employees against [unfair labor practices] and to provide remedial access to a state-level administrative agency with specialized expertise in [unfair labor practices]." *Wayne Co v AFSCME Local 3317*, 325 Mich App 614, 619; 928 NW2d 709 (2018). PERA also includes a duty of fair representation, which "coexists with but is not subsumed within statutorily proscribed unfair labor practices." *Technical, Prof & Officeworkers Ass'n of Mich v Renner*, ___ Mich ___, ___; ___ NW3d ___ (2024) (Docket No. 162601); slip op at 8.

"[A] union's duty of fair representation is comprised of three distinct responsibilities: (1) to serve the interests of all members without hostility or discrimination toward any, (2) to exercise its discretion with complete good faith and honesty, and (3) to avoid arbitrary conduct. *Goolsby v City of Detroit*, 419 Mich 651, 664; 358 NW2d 856 (1984) (quotation marks and citation omitted). Charging party has not explicitly stated which of the three fair-representation responsibilities that respondent allegedly breached, but he has not made any argument that respondent acted with hostility or discrimination or acted without good faith or honesty. Charging party has only mentioned that respondent acted arbitrarily.

Actions that constitute breach of the duty of fair representation through arbitrary conduct include: "impulsive, irrational, or unreasoned conduct," as well as "inept conduct undertaken with little care or with indifference to the interests of those affected." *Id*. at 679. "[T]he latter proscription includes, but is not limited to, the following circumstances: (1) the failure to exercise discretion when that failure can reasonably be expected to have an adverse effect on any or all union members, and (2) extreme recklessness or gross negligence which can reasonably be expected to have an adverse effect on any or all union members." *Id*. But "a union's mere negligence does not constitute a breach of its duty of fair representation." *Id*. at 680.

"A union has considerable discretion to decide which grievances shall be pressed to arbitration and which shall be settled, and must be permitted to assess each grievance with a view to individual merit." *Knoke v E Jackson Pub Sch Dist*, 201 Mich App 480, 486; 506 NW2d 878 (1993). It follows that a union member does not have "an absolute right to have his grievance taken to arbitration." *Demings v Ecorse*, 423 Mich 49, 70; 377 NW2d 275 (1985). This is true "even where, in some instances, the employee's grievance against the employer may have merit under the terms of the applicable collective bargaining agreement." *Silbert v Lakeview Ed Ass'n, Inc*, 187 Mich App 21, 25-26; 466 NW2d 333 (1991). This is because a union can consider more than just the merits of the grievance when deciding whether to arbitrate a grievance. "The union may consider the good of the general membership and has discretion to weigh the burden on the contractual grievance machinery, the amount at stake, the likelihood of success, the cost, and the

desirability of winning the award against considerations that affect the membership as a whole." *Knoke*, 201 Mich App at 486.

Charging party argues that respondent breached its duty of fair representation when it chose not to arbitrate charging party's grievance because Pierce counseled charging party that there was no requirement that he report his drunk-driving offense to the fire department. Charging party contends that he was merely following Pierce's advice when he withheld from the fire department information about his arrest, conviction, and driving restrictions, and that respondent had a duty to arbitrate his grievance because the local president's error contributed to charging party's discharge.

There is no dispute that Pierce told charging party that neither the CBA nor the Township's employment policies required an employee to report an off-duty arrest. However, there was competent evidence that charging party made the ultimate decision to withhold information about his arrest, conviction, and driving restrictions. During cross-examination at the evidentiary hearing, charging party clarified that Pierce never told him not to report his arrest; Pierce only told charging party that there was no express rule requiring charging party to do so. On the basis of that testimony, the ALJ found that Pierce never advised charging party against reporting his arrest and that it was charging party's decision to withhold the information out of a concern for his own privacy. For this latter finding, the ALJ relied in part on the February 3, 2021 text message that charging party sent to Pierce, in which charging party suggested that he would have to inform Chief Chevrette of a "dui conviction" or "license suspension," but because he was not facing such punishments, he asked Pierce to "respect me and my personal life and leave [charging party's OWI conviction] outside of work."

MERC adopted the ALJ's recommended order in its entirety as the final order in this case. Those findings are supported by competent, material, and substantial evidence, so they cannot be disturbed on appeal. *Calhoun Intermediate Sch Dist*, 314 Mich App at 46. While MERC did not specifically address whether charging party decided to withhold the information of his arrest on the basis of privacy considerations rather than Pierce's advice, it reasoned that even if Pierce provided erroneous advice, such conduct would amount only to negligence, which is insufficient to establish a breach of the duty of fair representation. See *Goolsby*, 419 Mich at 680. This legal conclusion does not violate a constitutional or statutory provision, nor is it based on a substantial and material error of law. *Calhoun Intermediate Sch Dist*, 314 Mich App at 46. So with this conclusion as well, we will not disturb it on appeal.

Charging party next argues that respondent breached its duty of fair representation when it failed to adequately investigate whether charging party could drive fire-department vehicles while his driver's license was restricted. According to charging party, respondent should have determined that he could drive department vehicles and brought the information forward during the suspension and grievance processes.

It is not apparent from the record, however, that charging party was still legally allowed to operate fire-department vehicles. In support of his contention that he could, charging party relies on a single message sent from a representative of the Michigan Bureau of Fire Services Fire Fighter Training Division. That message simply states that charging party's training certification was still valid—nowhere in the message does it state that respondent could still legally operate fire-department vehicles in light of the restrictions placed on his license. More importantly, the

message clearly states that the department could still revoke charging party's driving privileges regardless of the validity of charging party's training certification.

The February 26, 2021 memorandum from Chief Chevrette to charging party informing him that he was prohibited from driving any fire-department vehicle states that the prohibition was made on the basis of the restrictions placed on charging party's driver's license by the Secretary of State. The memorandum does not state that the prohibition was because charging party lacked the proper licensure, which suggests that the department was imposing the prohibition as a matter of discretion. Charging party's discharge notice signed by Chief Chevrette similarly does not address whether charging party was technically licensed to drive fire-department vehicles; the notice states that it was charging party's failure to inform Chief Chevrette of his driving restrictions that necessitated his discharge.

In his Step 2 grievance denial letter, Schwartz was more concerned with the operations of the fire department and public perception than the technicalities of licensure requirements. Schwartz was first concerned that one of the bond requirements placed on charging party was three-times-daily alcohol monitoring. According to Schwartz, the fact that a court deemed it necessary to monitor whether charging party was consuming alcohol showed that he posed a risk to the public. Schwartz was further concerned with the perception of the public if a fire fighter caused an accident or endangered public safety while the department was unaware that the fire fighter was under court-ordered alcohol monitoring. Schwartz acknowledged that a commercial driver's license and a fire fighter's state certification were essentially equivalent, but that it was a particular concern to him if a fire fighter was specifically disqualified from driving fire-department vehicles under one of the licensure options. Schwartz also pointed out that it was department policy that all fire fighters have a valid operator's license, and charging party was without a license with full driving privileges for several months. Finally, Schwartz offered a lengthy explanation that discharge was warranted because an off-duty drunk driving arrest was conduct that was simply unacceptable for a fire fighter employed by the Township.

Still, even assuming that charging party was legally allowed to drive fire-department vehicles and that Chief Chevrette and Schwartz were under the mistaken impression that he was not, we would conclude that respondent did not breach the duty of fair representation. Respondent's representatives remained in consistent contact with charging party throughout the duration of the suspension, discharge, and grievance processes. Respondent held at least six meetings that included some combination of respondent's executives, members, and charging party. Respondent negotiated a possible settlement for charging party under which charging party would have received more than $11,000 and a neutral job reference. Respondent respected charging party's decision to decline that settlement and pursue a grievance. Respondent took charging party's grievance through the first two steps of the process. Charging party was aware that a majority vote of the union members was required before respondent could proceed to arbitration on his grievance. Any lack of information available to the union members before the vote was mainly attributable to charging party—before the vote, charging party did not notify anyone of the April 26, 2021 message he received from the Michigan Bureau of Fire Services Fire Fighter Training Division, nor did he permit respondent to share with union members Schwartz's Step 2 denial letter. Schwartz's letter included the most detailed information regarding what the Township would argue regarding charging party's discharge during a potential arbitration. It appears from the record that the withholding of the information was a conscious, strategic choice

made by charging party. Charging party admitted in his testimony that, if the union members saw Schwartz's letter denying his grievance, that "anybody [would] double think" whether it was a wise choice to take charging party's grievance to arbitration. On this record, we would not conclude that respondent's failure to investigate whether respondent could legally operate fire-department vehicles was arbitrary—the conduct was not "impulsive, irrational, or unreasoned," nor was it "inept conduct undertaken with little care or with indifference to the interests of those affected." *Goolsby*, 419 Mich at 679. At most, the failure alleged would have amounted to negligence, which does not constitute a breach of its duty of fair representation. *Id*. at 680.

Charging party lastly argues that respondent failed to adequately investigate "the actual criminal offense" for which charging party was convicted, which led respondent to provide incorrect information to union members before they voted to deny arbitrating charging party's grievance.

Charging party contends that he was only ever charged with a misdemeanor, not a felony. He is correct. The charge of "super drunk" driving under MCL 257.625(1)(c) is not a felony. A first offense under Michigan's "super drunk" driving statute carries a maximum penalty of not more than 180 days in jail. MCL 257.625(9)(a)(*ii*).

The remainder of charging party's argument, however, is lacking—there is no evidence that any of respondent's executives or members were ever under the impression that charging party had faced felony charges. To whatever extent the union members may have lacked information regarding the circumstances of charging party's offense and charges, it was attributable to charging party. Respondent asked charging party if it could release Schwartz's Step 2 denial letter to the union members, and charging party refused to allow the documents to be turned over. Schwartz's Step 2 denial letter included a copy of a pretrial order from charging party's criminal case that states the charges that he was facing. The letter included a copy of charging party's judgment of sentence, which clearly states that charging party pleaded guilty to operating while intoxicated by liquor, not a felony. Schwartz's denial letter also included the police report from charging party's arrest, which includes most of the relevant details regarding his offense.[1] Under the circumstances, there was no error warranting reversal on the basis of confusion regarding whether charging party was charged with a felony.

## IV. CONCLUSION

There is little more respondent could have done to pursue charging party's grievance in light of its duty to the other union members. Respondent took charging party's grievance through two steps, then honored the votes of its members in deciding not to advance the grievance to arbitration. Charging party did not have "an absolute right to have his grievance taken to arbitration," and respondent had "considerable discretion" to decide whether to arbitrate charging

---

[1] The ALJ did state at one point that charging party was charged with a felony, but that statement was made well after respondent chose not to arbitrate charging party's grievance, and the misstatement was not relevant to the ALJ's or MERC's reasoning for dismissing charging party's claim.

party's grievance. *Demings*, 423 Mich at 70. Respondent was free to consider the good of the membership as a whole in addition to the relative risks and rewards of arbitrating charging party's grievance. *Knoke*, 201 Mich App at 486. There is considerable reason to doubt whether arbitration—which would have cost respondent between $8,000 and $9,000—would have been successful for charging party, especially considering charging party's own concern that the membership would have voted against arbitration if they read Schwartz's Step 2 denial letter. The concerns that charging party raised before MERC and on appeal have little to do with the rationale Chief Chevrette and Schwartz offered for why they believed it was necessary to discharge charging party. Under the circumstances, MERC did not err when it determined that respondent did not act arbitrarily or breach its duty of fair representation.

Affirmed.


/s/ Colleen A. O'Brien
/s/ Michael J. Kelly
/s/ Kathleen A. Feeney