*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

DETROIT PUBLIC SCHOOLS COMMUNITY
DISTRICT,

UNPUBLISHED
April 15, 2025
10:50 AM

Respondent-Appellee,

v

No. 367167
MERC
LC No. 21-C-0538-CE

LC BULGER,

Charging Party-Appellant.

Before: MURRAY, P.J., and M. J. KELLY and N. P. HOOD, JJ.

PER CURIAM.

Charging Party, LC Bulger, appeals as of right the decision by the Michigan Employment Relations Commission (MERC) dismissing his claim of an unfair labor practice (ULP) under the Public Employment Relations Act (PERA), MCL 423.201 *et seq*. We affirm for the reasons stated in this opinion.

## I. BASIC FACTS

Respondent is the Detroit Public Schools Community District. Drew Transition Center is a school in respondent's school district that serves young adult students with severe cognitive disabilities and a wide range of needs. At the time of the events giving rise to this appeal Bulger was employed as a trainable aide at Drew who had held his job for more than 20 years. Bulger's job duties included assisting students with their schoolwork, feeding, dressing, and toileting. Bulger also helped calm students when they lost control of their behavior.

Trainable aides in the district were employed pursuant to a collective bargaining agreement between respondent and American Federation of State, County, and Municipal Employees, Local 345. Bulger was a building representative in the union and an active participant in union activities. He also participated in an activist and political organization, By Any Means Necessary (BAMN). BAMN was associated with Equal Opportunity Now, a caucus within the union.

In March 2020, respondent canceled in-person instruction and implemented online instruction in response to the COVID-19 pandemic. During summer 2020, respondent decided

that teachers at Drew would continue to teach classes remotely, but the trainable aides would work alongside students, who would attend classes in the building. Bulger opposed this plan because he believed that in-person contact would place the aides and students at risk of contracting COVID-19.

Respondent notified the aides by e-mail that they were required to report to work on Monday, August 31, 2020. Students were scheduled to begin attending classes on Tuesday, September 8, 2020, the day after Labor Day. Bulger did not report to work the week of August 31, 2020 through September 4, 2020, or the week of September 8, 2020 through September 11, 2020. Bulger testified that he called the school every day to report that he was unable to come in because he was sick, but respondent's witnesses testified that he called on only some of these days. On September 8, 2020, or September 9, 2020, Bulger and other BAMN members held a protest outside Drew to persuade the students' parents and caregivers that in-person instruction was too risky. According to Drew's principal, Robert Avedisian, the protesters blocked the driveway to prevent school busses from dropping off students, so he went outside to ask the protesters to allow the busses to enter. There is conflicting testimony regarding what Avedisian said when he spoke to Bulger.

Bulger failed to work on any day from August 31, 2020 through September 17, 2020. On September 9, 2020, Avedisian notified the Human Resources (HR) office that Bulger had five consecutive absences. In response, an HR manager sent Bulger a notice of unauthorized absence on September 10, 2020. This notice advised Bulger that he must reconcile his employment status by resuming work or obtaining approval for a leave of absence. On September 17, 2020, the assistant superintendent for HR issued a notice of job abandonment to Bulger. That same day Bulger submitted a request for leave under the Family and Medical Leave Act (FMLA), 29 USC 2601 *et seq*., on the ground that he was suffering headaches that prevented him from working with high-needs students. In support, he submitted notes from his physician. On September 29, 2020, Employee Health Services denied Bulger's application for FMLA leave on grounds of insufficient documentation. On October 2, 2020, the assistant supervisor for HR, under the HR manager's direction, prepared a list of recommended terminations for submission to the Board of Education. Bulger's name was on this list, with an accompanying statement that he failed to report for work or reconcile his employment status in accordance with the notice of unauthorized absence. On October 14, 2020, respondent's Board of Education approved Bulger's termination on grounds of job abandonment.

Bulger filed a ULP claim with MERC. He averred that he was terminated in retaliation for exercising his right to engage in concerted action for the purpose of changing work conditions. Following a six-day evidentiary hearing, the administrative law judge (ALJ) found that Bulger failed to demonstrate that his termination was motivated by antiunion animus. MERC affirmed the ALJ's decision. Bulger now appeals.

## II. MERC DECISION

### A. STANDARD OF REVIEW

Bulger argues that MERC erred by affirming the ALJ's decision. "We review MERC decisions pursuant to Const 1963, art 6, § 28, and MCL 423.216(e)." *Calhoun Intermediate Sch*

*Dist v Calhoun Intermediate Ed Ass'n*, 314 Mich App 41, 46; 885 NW2d 310 (2016) (quotation marks and citation omitted). "MERC's factual findings are conclusive if they are supported by competent, material, and substantial evidence on the record considered as a whole." *Id.* (quotation marks and citations omitted). MERC's legal rulings are reviewed de novo, but "may not be disturbed unless they violate a constitutional or statutory provision or they are based on a substantial and material error of law." *Id.* (quotation marks and citation omitted). Questions of statutory interpretation are reviewed de novo. *Makowski v Governor*, 495 Mich 465, 470; 852 NW2d 61 (2014).

## B. ANALYSIS

### 1. PRIMA FACIE CASE

Bulger asserts that respondent terminated his employment in violation of MCL 423.210(1)(a). MERC also addressed MCL 423.210(1)(c) as a possible basis for a ULP. MCL 423.210(1) prohibits a public employer, or its officer or agent, from taking enumerated actions. For instance, they may not

> (a) Interfere with, restrain, or coerce public employees in the exercise of their rights guaranteed in section 9.

> * * *

> (c) Discriminate in regard to hiring, terms, or other conditions of employment to encourage or discourage membership in a labor organization.

In *Int'l Union, United Auto, Aerospace & Agricultural Implement Workers of America v Sterling Hts*, 176 Mich App 123, 128-129; 439 NW2d 310 (1989),[1] this Court set forth the framework for analyzing a ULP claim arising under MCL 423.210(1)(a) and (c) from adverse treatment of an employee for engaging in PERA-protected activity:

> [W]here it is alleged that a discharge is motivated by antiunion animus the burden is on the party making the claim to demonstrate that protected conduct was a motivating or substantial factor in the decision of the employer to discharge the employee. Once this showing is established, the burden then shifts to the employer to demonstrate that the same action would have taken place even in the absence of the protected conduct. The burden of the employer is one of going forward to meet the prima facie case established by the employee. It is not a burden of persuasion on the ultimate issue of the existence or nonexistence of a violation. It is a balancing of the evidence. If the employer, by credible evidence, balances the employee's prima facie case, the employer's burden of proof is met and the duty of

---

[1] This Court is "not *strictly required* to follow uncontradicted opinions from this Court decided before November 1, 1990, but we think they are nevertheless considered to be precedent and entitled to significantly greater deference than are unpublished cases." *Woodring v Phoenix Ins Co*, 325 Mich App 108, 114-115; 923 NW2d 607 (2018).

producing further evidence shifts back to the employee. The burden of the employer referred to is a burden of production of evidence to meet the prima facie case of the employee. If the burden of the employer is met, the burden is then once again on the employee. [Quotation marks and citation omitted.]

Bulger presented evidence that he engaged in protected conduct under PERA § 9 by engaging in "lawful concerted activities for the purpose of . . . mutual aid and protection," and that respondent wrongfully retaliated against him under § (10)(1)(a) by interfering with his exercise of his rights under § 9, and under § (10)(1)(c), by discriminating against him to discourage membership in a labor organization. In turn, respondent attempted to satisfy its burden of production with the response that Bulger was terminated because he failed to report to work for more than five consecutive days without reconciling his employment status in response to the unauthorized-absence notice. Bulger then tried to demonstrate that respondent's actions were a pretext for antiunion animus by offering evidence of school administrators' negative attitude toward the BAMN protest and by highlighting FMLA irregularities and other flaws in respondent's determination of job abandonment.

With respect to § 10(1)(a), MERC concluded that Bulger failed to meet his burden of demonstrating antiunion animus. The HR manager completed the actions resulting in Bulger's termination, but she did not know about his activities. Rather, she performed ministerial functions in accordance with HR policies. She did not exercise discretion in deciding whether to begin the process by sending the unauthorized-absence notice. The assistant superintendent for HR and other persons who participated in the termination process did not know about Bulger's activities. Avedisian informed the HR manager of Bulger's absenteeism, but he did so because it was a duty of his position. Based upon those findings, MERC concluded that Bulger failed to establish a prima facie case for retaliation. With respect to § 10(1)(c), MERC found that Bulger's protest of working conditions was a protected activity, but the work stoppage was not. Further, although Avedisian was aware of Bulger's protected concerted activity, there was only "tenuous" evidence that Avedisian harbored animus or hostility toward Bulger's actions. Avedisian "may have been frustrated or upset that individuals were concerned about entering the premises," but that was not evidence of animus. MERC found that a statement made by respondent's superintendent, Dr. Nicolai Vitti, regarding protesters was a general statement with no indication that Dr. Vitti was aware of Bulger's activities. MERC further found Bulger's failure to report for work from August 31, 2020 to September 9, 2020, was an unlawful withholding of services, and therefore a "strike" and unprotected activity.

These findings by MERC are supported by substantial and material evidence on the whole record. *Calhoun Intermediate Sch Dist*, 314 Mich App at 46. Avedisian was the only individual with any direct connection to the termination decision who knew that Bulger was involved in the protest activity outside of the school. Bulger's evidence of Avedisian's bias mainly consisted of testimony regarding their confrontation outside the school building and another trainable aide's testimony that Avedisian said, "[W]e finally got LC, he just got terminated this morning." The ALJ's and MERC's findings that this evidence was less than convincing are not contrary to the evidence. Avedisian praised Bulger and described him as a "valuable" employee. A reasonable trier of fact could conclude that Avedisian found Bulger's protest disruptive and unnecessary, without also finding that Avedisian wanted to fire him. A reasonable trier of fact also could conclude that Avedisian reported Bulger's absenteeism because it was a duty of his job as

principal. MERC therefore did not err in concluding that Bulger failed to establish a prima facie case that respondent retaliated against him under PERA §§ 10(1)(a) and (c).

On appeal, Bulger does not address MERC's application of the prima facie framework in his appellate brief, other than to assert that MERC did not consider "the totality of the circumstances" in addressing his claims of retaliatory animus. He interprets MERC's decision as wrongly concluding that his past successful dealings disproved animus. He states that MERC wrongly focused on the HR manager's lack of knowledge about his involvement in the protests, notwithstanding that she was acting on the direction of Avedisian and the assistant superintendent. Bulger also attacks the credibility of respondent's explanation for his termination, emphasizing that he did not abandon his job because he called in his absences and applied for FMLA leave. All of these arguments challenge the ALJ's and MERC's weighing of evidence.

"Review of an administrative agency's fact-finding is akin to an appellate court's review of a trial court's findings of fact in that an agency's findings of fact are entitled to deference by a reviewing court." *In re Complaint of Rovas Against SBC Mich*, 482 Mich 90, 101; 754 NW2d 259 (2008). "In its fact-finding capacity, the agency has reviewed evidence, such as witness testimony, and it is in the best position to evaluate the credibility and weight of that evidence." *Id*. The reviewing court "must ensure that the finding is supported by record evidence; however, the reviewing court does not conduct a new evidentiary hearing and reach its own factual conclusions, nor does the reviewing court subject the evidence to review de novo." *Id*. Bulger's arguments regarding the totality of the evidence ask this Court to exceed these limits of its review, which we will not do.

## 2. MERC'S FINDING THAT BULGER WAS STRIKING

Bulger next argues that MERC's finding that he was engaged in a strike violated PERA and ignored evidence. "A public employee shall not strike and a public school employer shall not institute a lockout." MCL 423.202. The term "strike" is statutorily defined to mean

> the concerted failure to report for duty, the willful absence from one's position, the stoppage of work, or the abstinence in whole or in part from the full, faithful, and proper performance of the duties of employment for the purpose of inducing, influencing, or coercing a change in employment conditions, compensation, or the rights, privileges, or obligations of employment. For employees of a public school employer, strike also includes an action described in this subdivision that is taken for the purpose of protesting or responding to an act alleged or determined to be an unfair labor practice committed by the public school employer. [MCL 423.201(k).]

MCL 423.202a provides the procedures for responding to an illegal strike. The public school employer and superintendent must notify MERC of the strike and serve the bargaining representative with a copy of the notice. MCL 423.202a(1). MERC then conducts a hearing "to determine if conditions constituting a strike by 1 or more public school employees in violation of section 2 . . . exist." MCL 423.202a(3). A public school employee who is absent from work without permission during a strike "is presumed to have engaged in the strike on that date." MCL 423.202a(5). "A public school employee presumed to have engaged in a strike" may challenge

the presumption via the procedure provided by MCL 423.202a(6). Additionally, MCL 423.202a(7) authorizes a salary deduction against an employee who engages in an unlawful strike.

The evidence supported MERC's finding that Bulger's demonstration and refusal to enter the building constituted "the willful absence . . . , the stoppage of work, or the abstinence . . . from . . . performance of the duties of employment for the purpose of inducing . . . a change in employment conditions, compensation, or the rights, privileges, or obligations of employment." Although Bulger offers alternative reasons why he did not report to work when the school year began, MERC did not err in finding that he engaged in a work stoppage and abstained from performance of his duties for the purpose of effecting a change in the conditions of his employment, namely to stop the resumption of in-person classes. Indeed, Bulger testified that this was the purpose of his protest. MERC's finding that his work stoppage met the definition of striking is therefore supported by evidence.

Bulger argues that respondent cannot accuse him of striking after the fact because it did not comply with the PERA procedures mandated by MCL 423.202a. This argument disregards that respondent raised the striking argument defensively, to counter Bulger's claim that his work stoppage was protected activity. Nothing in § 2a of PERA requires an employer to use the notice procedures as a condition of defensively asserting that an employee's withholding of services is unprotected strike activity.

Bulger argues that MERC ignored his explanation that he was not working because his physician instructed him to stay off work. This argument is belied by respondent's own testimony that he resisted the reopening and urged others to do so. Bulger testified that he was not able to attend every day of the protests, but MERC acted within its role as finder of fact in not crediting Bulger's explanation.

Finally, Bulger argues that he was not required to work because his union president and respondent did not sign a letter of agreement with respondent until September 8, 2020. However, there was no testimony that aides were not required to report on August 31, 2020.

## 3. MEDICAL OPINION

In a footnote, MERC noted that the " 'total' incapacitation asserted by [Bulger's physician] appears to directly conflict with Bulger's admitted active participation in the September 8 or 9 protests at Drew." Bulger argues that that statement shows that MERC substituted its own medical opinion in place of his physician's opinion, contrary to the FMLA provisions and defendant's employment manual. Bulger acknowledges that MERC's jurisdiction did not extend to granting him relief for respondent's alleged violations of the FMLA. He argues, however, that respondent adopted the FMLA requirements, and that respondent's breach of its own standards demonstrates that it lacked a legitimate basis for terminating him.

However, to prove violation of PERA § 10, Bulger still needs to prove that irregularities in respondent's denial of his FMLA request were motivated by antiunion animus. *Int'l Union*, 176 Mich App at 128. He fails to do so. Moreover, Bulger mischaracterizes the proceedings when he asserts that MERC made a judgment as to his medical condition. MERC's remark that Bulger's participation in the protest conflicted with Bulger's physician's statement regarding total

incapacitation was not a medical judgment. It was a reasonable lay opinion that a person suffering from incapacitating headaches would not choose to repeatedly walk a picket in a noisy, emotionally intense protest.

### 4. BULGER'S PAST DEALINGS WITH RESPONDENT

Finally, Bulger argues that MERC wrongly concluded that respondent could not have harbored animus against him for his union activities because respondent and Bulger had a past history of successful and positive negotiations. We disagree.

In its opinion, MERC remarked that respondent's representatives were aware of Bulger's past union activities, but Bulger "failed to present evidence of anti-union animus or hostility" toward Bulger. MERC continued, "To the contrary, the evidence suggests that Bulger and the Employer representatives . . . had an amicable, respectful, and productive relationship." Read in context, MERC never suggested that the past positive history precluded the possibility of hostility toward Bulger. It merely indicated that a past positive relationship made present hostility less likely.

### III. CONCLUSION

MERC did not err in finding that Bulger's work stoppage was not a protected activity, and that respondent's decision to terminate his employment for absenteeism was not motivated by antiunion animus or hostility toward Bulger's protected concerted activity. Any error that respondent might have made with respect to Bulger's request for FMLA leave did not equate with a violation of PERA. MERC thus properly dismissed his ULP claim.

Affirmed. Respondent may tax costs as the prevailing party. MCR 7.219(A).

/s/ Christopher M. Murray
/s/ Michael J. Kelly
/s/ Noah P. Hood